**In re William R. DREXLER, Debtor.**

**Bankruptcy No. 84 B 10383 (PBA).**

United States Bankruptcy Court,
S.D. New York.

Jan. 29, 1986.
As Corrected March 6, 1986.

---

Carl E. Person, New York City, for debtor.

Shea & Gould, New York City, for petitioners; Remy J. Ferrario, of counsel.

David Green, Salomon Green & Ostrow, P.C., New York City, Interim Trustee.

1. This is one of seven related cases. Nine months before the involuntary petition was filed against Drexler and on June 23, 1983, involuntary Chapter 7 petitions were filed against three corporations affiliated with Drexler: Frank Feit Associates ("Feit Associates"), Feit & Drexler, Inc. ("F & D") and William R. Drexler International, Inc. a/k/a William R. Drexler International, Ltd. ("International") (collectively the "Original Corporate Debtors"), by English & American Insurance Co., Ltd. ("English") and Bellefonte Insurance Co., Ltd. ("Bellefonte") on the basis of a May 31, 1983 judgment in their favor for an amount in excess of $800,000. Following a hearing on July 15, 1983, an order for relief was granted as to each of the three companies. David Green, Esq. ("Green") was appointed as trustee in the cases.

English and Bellefonte thereafter and on October 20, 1983 filed involuntary petitions against three other Drexler-related entities, Drexler Associates, Inc. ("Associates"), Domestic & Foreign Facilities of New Jersey, Inc. ("Domestic-N.J.") and Domestic & Foreign Facilities, Inc. ("Domestic") (collectively the "Additional Corporate Debtors"). Subsequently the entities which are the petitioners in this case joined as petitioning creditors against the Additional Corporate Debtors. No orders for relief have yet been entered and by separate decision being issued concurrently with this decision Green as the Trustee for the Original Corporate Debtors has been given leave to substitute himself as the real party in interest.

## MEMORANDUM DECISION GRANTING MOTION FOR SUMMARY JUDGMENT AND ENTRY OF ORDER FOR RELIEF

PRUDENCE B. ABRAM, Bankruptcy Judge:

On March 14, 1984, an involuntary Chapter 7 petition was filed against William R. Drexler ("Drexler").[1] The petitioners were Michael H. Cockell ("Cockell") in the capacity of underwriter for the F.N. Rouse Syndicate ("Rouse") and as Lead Underwriter for all other underwriters at Lloyd's of London subscribing to contracts designated as B00021 and B00090 (collectively "Underwriters"), and Manning Beard Limited ("Manning"), a London insurance broker, whose principals are named as intermediaries in the two contracts. The claims of the Petitioners are based on two judgments against Drexler and others each dated June 13, 1983 issued in a case brought by the petitioners in the United States District Court for the Southern District of New York captioned *Cockell et al. v. Frank Feit Associates, Inc. et al.*, 83 Civ. 0930(JES) (the "District Court Action").[2] One of the

Green is also the interim trustee in this case. Appointment of an interim trustee was directed by the court on March 19, 1984, five days after the involuntary petition was filed, upon the application of the petitioners.

2. Following entry of the judgments, a single notice of appeal dated June 28, 1983 had been filed by Drexler acting pro se for the defendants. At the time the involuntary petition was filed, the petitioners maintained the appeal had been dismissed on January 31, 1984 for lack of prosecution. Drexler maintained Green, Green's counsel, petitioners and others had conspired to cause the Original Corporate Debtors, also defendants in the District Court Action, to default in perfecting the appeal and had failed to forward the notices from the Second Circuit to Drexler so that he would default. Subsequently Green stipulated with the petitioners to dismissal without prejudice of the appeal of the Original Corporate Debtors. Drexler's individual appeal was restored upon application to the Second Circuit. The appeal, which was continued by Drexler after the filing of the involuntary petition with this court's approval, was briefed and argued. On November 6, 1984, the Second Circuit remanded the matter to the District Court upon finding that neither the Money nor Sanctions Judgment was final and thus nonappealable. See footnotes 3 and 4, *infra*. Although the single notice of appeal created an ambiguity as to whether one or both of the

judgments is a money judgment for $335,-000 (the "Money Judgment).[3] The second and a companion judgment (the "Sanctions Judgment"), which is not in any liquidated amount, strikes with prejudice the answer and counterclaim of Drexler and the other defendants and directs judgment on default on the balance of the complaint against Drexler and the other defendants and refers the matter to a magistrate for an inquest on the amount of the judgment.[4]

The District Court Action had been commenced on February 3, 1983 by the Underwriters and Manning. Drexler individually, the three corporations which are the Original Corporate Debtors and Associates, one of the Additional Corporate Debtors, as well as "Does" One through Twenty were named as defendants. The complaint stated that Drexler and the four named corporate defendants had written policies for liability and property damage for amusement parks and carnivals located within the United States, had collected premiums and had failed to remit collections to the plaintiffs as required under the parties' written agreements. The agreements, contracts designated B00021 and B00090, dated June 1978 and April 1980, authorized Feit Associates to serve as the agent for the Underwriters and gave Drexler, individually, the authority (so-called "tribunal authority") to

---

Judgments were being appealed from, it is apparent that the Second Circuit considered the notice of appeal to relate to both.

3. The Money Judgment was entered after the District Court concluded that plaintiffs were entitled to partial summary judgment for that amount as a matter of law and that there was

"no just reason for delay in the entry of final judgment in said amount in behalf of plaintiffs and against defendants jointly and severally." Money Judgment at 2.

The District Court ordered that any remaining issues await further disposition by the court. Fed.R.Civ.Pro. 54(b) provides that

"When more than one claim for relief is presented in an action * * * the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment."

In remanding the appeal from the Money Judgment, the Second Circuit stated:

"The district court's order for partial summary judgment * * * is not final, since the last paragraph thereof leaves open the questions of additional damages and prejudgment interest, apparently to be determined by a magistrate. The judgment is therefore not appealable, and the apparent certification pursuant to Rule 54(b) was improperly granted." Order of the Second Circuit dated November 5, 1984 at 1.

4. The Sanctions Judgment recites

"This cause having come on to be heard on plaintiffs' motion for sanctions pursuant to Rule 37(b), Fed.R.Civ.P., on April 5, 1983 and the Court having conducted an evidentiary hearing and having made findings of fact, and the Court having issued an order at said hearing on April 5, 1983, which order was embodied in a written Order dated April 11, 1983, directing, inter alia, that defendants comply no later than April 12, 1983 with the Court's previous orders to produce certain records, and directing that the corporate defendants appear by attorney no later than April 1, 1983, and the Court having found that defendants have failed to comply with said orders of the Court and that defendants have repeatedly obstructed proper discovery in this action and that, accordingly, plaintiffs are entitled to an order striking defendants' answer and counterclaims and directing entry of a judgment on default against defendants, jointly and severally * * *." Sanctions Judgment at 1–2.

The Sanctions Judgment goes on to provide

"ORDERED that plaintiffs' motion for sanctions pursuant to Rule 37(b), Fed.R.Civ.P., is hereby granted; and it is further

"ORDERED, ADJUDGED AND DECREED that defendants' answer and counterclaims are hereby stricken with prejudice; and it is further

"ORDERED, ADJUDGED AND DECREED that plaintiffs have judgment on default against defendants Frank Feit Associates, Inc., Feit & Drexler, Inc., William R. Drexler International, Ltd., Drexler Associates, Inc., William R. Drexler and "Does One Through Twenty, jointly and severally, on the claims set forth in plaintiffs' complaint in an amount to be determined upon an inquest [before a magistrate]." Sanctions Judgment at 2.

The Sanctions Judgment makes no reference to Fed.R.Civ.Pro. 54(b) nor does it contain findings, as the Money Judgment does, that are derived from that rule. Once the amounts were determined by the inquest as provided in the Sanctions Judgment, the entirety of the District Court Action would have been disposed of. In remanding the appeal from the Sanctions Judgment, the Second Circuit stated:

"This order [i.e. the Sanctions Judgment] does not contain any Rule 54(b) certification and in addition appears to leave open the same issues referred to in paragraph 1 above. Accordingly, it, too, is not appealable at this time." Order of the Second Circuit dated November 5, 1984 at 2.

bind insurance within the limits set forth in the agreements. Pursuant to the agreements and in accordance with customary practice, a document known as a bordereau was to be remitted to the Underwriters each month showing the policies written, premiums collected and claims paid and the net amounts shown as due to the Underwriters on bordereaux were to be settled by payment within 90 days.

In the District Court Action, Drexler appeared *pro se* on behalf of himself and purported to appear on behalf of the corporations. Drexler was repeatedly advised by the district court that he could not appear for the corporate defendants since he was not an attorney and the corporate defendants were directed to retain counsel. Compare *Jones v. Niagara Frontier Transportation Authority*, 722 F.2d 20, 22 (2d Cir.1983) ("[I]t is established that a corporation, which is an artificial entity that can only act through agents, cannot proceed *pro se.* * * * Since, of necessity, a natural person must represent the corporation in court, we have insisted that that person be an attorney licensed to practice before our courts.") No attorney ever appeared for the defendant corporations.

Drexler filed an answer, on behalf of himself and apparently of the remaining defendants, in the District Court Action on or about February 23, 1983 which denied all the material allegations of the complaint. Thereafter and on or about March 3, 1983, Drexler filed a document styled "Counterclaim", again apparently on behalf of himself as well as the remaining defendants, that asserts a claim for money damages arising out of plaintiffs' acts, individually and in concert with one another, which were alleged to constitute:

"A. Conspiracy

"B. Tortious interference with our rights and other business relations;

"C. Fraudulent and misleading representation;

"D. Libel;

"E. Slander;

"F. Invasion of Privacy;

"G. Harassment;

"H. Cancellation of Defendants Tribunal Authority; and

"I. Violations of Section 1 of the Sherman Act, U.S.C." Counterclaim at ¶ 3.

It was Drexler's assertion that the plaintiffs had conspired to eliminate "the defendant" as a factor in the amusement insurance business by granting to a competitor a contract permitting the writing of amusement insurance whereby the competitor was able to pirate the business of the defendants. The counterclaim states that while the damages were not then susceptible of precise calculation they were believed to be in excess of six million dollars.

The District Court held several hearings beginning in early February 1983 at which Drexler appeared and at some of which he was examined under oath. In late February 1983, Drexler and his entities moved offices. Thereafter, it appeared that a box containing important documents that Drexler had been directed to produce was missing. Several additional hearings were held at which the missing documents were discussed at length and the District Court found Drexler's explanations for their disappearance incredible and discovery sanctions warranted.[5] At a hearing held before the District Court on April 12, 1983, the following exchange occurred:

"THE COURT: Mr. Drexler, there is no reason why the judgment for $350,000 should not be entered.

"MR. DREXLER: I'd rather not see the judgment entered. I'd rather sit down and work out a compromise. I do want to pay them.

"THE COURT: But you do admit the liability of $350,000.

---

**5.** See, e.g., District Court Action Transcript 4/5/83 at 54–6.

In his appeal to the Second Circuit, Drexler argued that the petitioners as plaintiffs in the District Court Action had created a "Deceitful Ambiguity" with respect to the significance of the missing documents and the quantum of documents produced by Drexler that had caused the District Court improperly to impose the Sanctions Judgment. Drexler's Appellate Brief at 6–12.

"MR. DREXLER: I can't deny I owe them $335,000." Transcript 4/12/83 at 12, lines 8–15.

Drexler's statement had been preceded by similar exchanges at prior hearings. Thereafter, the District Court signed the Money and Sanctions Judgments. Although Drexler took an appeal, he never requested or obtained a stay pending appeal.

Drexler has repeatedly asserted that the petitioners are proceeding in this case on the basis of default judgments. A default judgment is generally given the same effect as a judgment rendered after trial. See 10 Wright, Miller & Kane, Federal Practice and Procedure, Civil 2d, § 2684; *Matter of Roloff*, 598 F.2d 783 (2d Cir. 1979). See also, *Riehle v. Margolies*, 279 U.S. 218, 49 S.Ct. 310, 73 L.Ed. 669 (1929). In any event, Drexler mischaracterizes the facts. The Money Judgment is not a default judgment. The Sanctions Judgment is not a default judgment insofar as it grants sanctions and directs the striking of the answer and counterclaim. The Sanctions Judgment goes on to grant judgment of liability by default in petitioners' favor on the other portions of the District Court Action complaint because there was, as a result of the striking of the answer and counterclaim, no legally cognizable opposition. The default portion of the Sanctions Judgment is unliquidated. In the federal system, even when a judgment by default is entered on liability, the defendants are free to appear and defend the issues respecting the calculation of the amount of damages. See *Trans World Airlines, Inc. v. Hughes*, 449 F.2d 51 (2d Cir.1971); *reversed on other grounds*, 409 U.S. 364, 93 S.Ct. 647, 43 L.Ed.2d 577 (1973); and 10 Wright, Miller & Kane, Federal Practice and Procedure, Civil 2d, § 2688. Cf. *Au Bon Pain Corporation v. Artect, Inc.*, 653 F.2d 61 (2d Cir.1981). No damage hearing had been held before the involuntary petition was filed.

On March 15, 1984, Drexler filed an answer to the involuntary petition and asserted a statutory counterclaim. The counterclaim seeks recovery of damages under Bankruptcy Code § 303(i) (1–2) for a bad faith filing of the involuntary petition. Drexler's answer denies the material allegations of the involuntary petition, including the existence of the contracts designated as B00021 and B00090. In addition, the answer denied

"that either [the Money or Sanctions] judgment has any present force or effect for reasons including but not limited to: (i) the two judgments are on appeal and the automatic stay under the bankruptcy laws has stopped both actions from proceeding to a final determination; (ii) the judgments are default judgments and themselves not evidence of any indebtedness of Drexler to any of the petitioners in this bankruptcy proceeding; and (iii) Drexler has meritorious defenses and counterclaims to the actions alleged by the petitioners." Answer at ¶ 8.

Drexler also denies that he has more than 12 creditors and denies that he is not generally paying his debts as they become due.

Drexler made demand in his answer for a jury trial. By opinion dated April 6, 1984, the court denied Drexler's request for a jury trial. *In re Drexler*, 39 B.R. 18 (Bankr.S.D.N.Y.1984).

A trial on the involuntary petition commenced on April 6, 1984. Drexler testified at length on that date concerning the defenses and counterclaims he had raised in the District Court Action and was asserting in his answer to the involuntary petition in defense to the petitioners' claims.[6] It be-

6. At the trial on the involuntary, Drexler testified as follows relative to his denial of the existence of the two contracts:

"Q. Then you just testified a second ago that they did exist?

"A. [Drexler] No. I haven't, they never existed for me, because I refused to accept them and I refused to sign for them.

"I told Graham Beard time and time again, 'My name is not Frank Feit Associates, put the contract in the name of Drexler Associates or William R. Drexler International,' so I deny the existence of those contracts, because they want to make me use a name that's not mine, so for me they don't exist." Transcript 4/6/84 at 212, lines 14–24.

Drexler also raised his complaint that the petitioners failed to recognize him appropriately in the District Court Action as a defense to nonpayment of the bordereaux amounts. See District Court Action Transcript 4/5/83 at 52–3 ("THE COURT: * * * The plaintiff has said to the

came apparent that discovery relative to a third-party witness, the alleged favored third-party competitor, might prove helpful. Discovery against the petitioners was not had, *inter alia,* because they were situated in London, England. Thereafter, counsel for the petitioners and Drexler undertook discovery from the third-party witness.

Before the trial could resume or any discovery was had of the petitioners and under date of June 28, 1984, the petitioners moved for summary judgment and the entry of an order for relief. Drexler cross-moved on July 6, 1984 for, among other relief, an order permitting additional discovery prior to resolution of the summary judgment motion, as permitted by Fed.R. Civ.Pro. 56(f).[7] See Bankruptcy Rules 7056 and 9014.

The summary judgment motion intersected with the disruption of the bankruptcy court system due to congressional inaction in the wake of the decision of the United States Supreme Court in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co., et al.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). On July 10, 1984, Congress adopted the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA"). In addition to the various jurisdictional provisions of BAFJA, certain substantive changes in the Code were made, including an important amendment to Code § 303, which governs involuntary cases, that was to be applied in pending cases. BAFJA, Pub.L. No. 98–353, § 553(b), 98 Stat. 333, 392 (see 9 Bankr. Serv.L.Ed.Supp. at 66). See also *In re*

*Stroop,* 13 B.C.D. 319 (Bankr.D.Colo.1985). A further round of briefing followed.

For the reasons which follow, the court finds that the petitioners' motion for summary judgment should be granted and that an order for relief in this case should be entered. Drexler's cross-motion is denied in all respects as additional factual exploration is unnecessary in light of the applicable legal principles.

## DISCUSSION

Bankruptcy Code § 303(b)(1) provides that an involuntary case can be commenced by the filing of a petition

> "by three or more entities, each of which is * * * a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute * * * if such claims aggregate at least $5,000 more than the value of any lien on property of the debtor securing such claims * * *."

An order for relief may be entered only if

> "the debtor is generally not paying such debtor's debts as such debts become due unless such debts * * * are the subject of a bona fide dispute * * *."

Code § 303(h)(1).[8]

The BAFJA amendment added the key phrase "the subject of a bona fide dispute" to both Code § 303(b)(1) and (h)(1). Much of the court's analysis turns on the meaning to be ascribed to the amendments made to Code § 303 by BAFJA.

Little history to the BAFJA amendment to Code § 303 exists. The amendment was

---

court * * * that apparently he has got some kind of desire for recognition, the precise contours of which are not clear, as to which he is withholding money which he owes as a quid pro quo.")

**7.** Fed.R.Civ.Pro. 56(f) provides

"Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

Drexler's affidavit attached to his motion states

"I am unable to present the evidence I need to prove the allegations in paragraphs 8–10 [which relate to his counterclaims] of my statement under Rule 3(g) of the Local Rules because this evidence is in the possession of the petitioning creditors and their attorneys, and others, such as Lloyds of London and its NMA Tribunal Committee, and only through discovery will I be able to obtain this evidence." Drexler Affidavit sworn to July 6, 1984 at ¶ 6.

**8.** Code § 303(h)(2) also permits entry of an order for relief if a custodian has been appointed. However, that section has no application to the present case.

not among the much debated proposals that preceded the enactment of BAFJA. In proposing the amendment, Senator Max Baccus of Montana stated:

"The problem can be explained simply. Some courts have interpreted Section 303's language on a debtor's general failure to pay debts as allowing the filing of involuntary petitions and the granting of involuntary relief even when the debtor's reason for not paying is a legitimate and good faith dispute over his or her liability. This interpretation allows creditors to use the Bankruptcy Code as a club against debtors who have bona fide questions about their liability but who would rather pay up than suffer the stigma of involuntary bankruptcy proceedings. * *

"I believe this amendment although a simply [sic] one is necessary to protect the rights of debtors and to prevent misuse of the bankruptcy system as a tool of coercion * * * " S. 7618, 98th Cong.2d Sess., June 19, 1984.

There is no definition of "bona fide dispute" in the Code. Reference to the pre-amendment cases is of only limited usefulness even though the BAFJA amendment was intended as clarifying prior law. See, e.g., *In re Covey*, 650 F.2d 877 (7th Cir. 1981); *In re B.D. International Discount Corp.*, 701 F.2d 1071 (2d Cir.1983), *cert. den.* 464 U.S. 830, 104 S.Ct. 108, 78 L.Ed.2d 110; and *In re All Media Properties, Inc.*,

5 B.R. 126 (Bankr.S.D.Tex.1980), *aff'd* 646 F.2d 193 (5th Cir.1981).[9]

The simplicity of the "bona fide dispute" language is deceptive. Substantial interpretative problems are presented in its application to any given set of facts. One court dealing with the issue as a matter of first impression has held that if the defense of the alleged debtor to the claim of the petitioning creditor raises material issues of fact or law so that

"a summary judgment could not be rendered as a matter of law in favor of the creditor on a trial of the claim, the claim is subject to a bona fide dispute."

*In re Stroop, supra*, 13 B.C.D. at 319. This standard, even if this court were to adopt it, is not readily applicable to the facts of this case because of the procedural posture of the District Court Action at the time the involuntary petition was filed. Another court grappling with the issue has held:

"A bona fide dispute is a conflict in which an assertion of a claim or right made in good faith and without fraud or deceit on one side is met by contrary claims or allegations made in good faith and without fraud or deceit on the other side."

*In re Johnston Hawks, Ltd.*, 49 B.R. 823, 830 (Bankr.D.Ha.1985). This standard appears to require determination of the debtor's subjective good faith and may require as well as an objective appraisal of the

9. The *All Media* decision continues to provide a sound definition of the term "contingent".

"[C]laims are contingent as to liability if the debt is one which the debtor will be called upon to pay only upon the occurrence or happening of a extrinsic event which will trigger the liability of the debtor to the alleged creditor and if such triggering event or occurrence was one reasonably contemplated by the debtor and creditor at the time the event giving rise to the claim accrued." 5 B.R. at 133.

Using this definition, it is apparent that once a judicial finding of liability occurs and a judgment is entered, as had occurred here, the issue of contingency is foreclosed without regard to whether the claim was contingent prejudgment. It is therefore unnecessary for this court to determine whether petitioners' claims were con-

tingent prior to judgment as they are not contingent now.

The necessity for a definition of the term "contingent" prior to the BAFJA amendment to Code § 303 arose out of attempts to limit the standing to file an involuntary petition of a creditor whose claim was disputed by the debtor or by defining the claim as contingent. Judge Potter opined in *All Media*

"[T]he court believes that it is better to determine whether the holder of the claim has shown that liability on the debt existed * * *. If there is a bona fide dispute of either fact or law then the holder would not be disqualified from being a petitioning creditor since he would be a holder of a disputed claim, but not one that is contingent as to liability within the definition fashioned above." 5 B.R. at 135. See and compare *In re Covey*, 650 F.2d 877 (7th Cir.1981).

merits. The court also finds this standard inappropriate in this case because of the procedural posture of the District Court Action when the involuntary petition was filed.

Nor have the BAFJA amendments to Code § 303 eliminated the need to make a careful appraisal of the facts of each case. Compare *In re B.D. International Discount Corp., supra,* 701 F.2d at 1077 ("We prefer to see some more cases before we decide whether to accept *Covey,* either as written or in modified form, as the law of this circuit, although our decision here is consistent with it. We realize that, by deciding both phases of this case upon the particular facts here presented, we are not giving bankruptcy judges the guidance which they doubtless desire and it is our duty to provide if we properly can. But it is better to fail in this respect than to attempt to give guidance without having seen the variety of factual situations, having had the adversary presentations, and having the benefit of scholarly commentary which time will undoubtedly afford.") Although this court need not and ought not define in this case the outer boundaries of the phrase "bona fide dispute", this case does present two recurring and important issues of interpretation of the phrase as to which a generalized answer is desirable. The first issue is whether a petitioner's claim is the subject of a bona fide dispute if it is based on an unstayed final judgment [10] from which an appeal by the debtor has been taken and is pending when the peti-

tion is filed. The second issue is whether a petitioner's claim is the subject of a bona fide dispute if the debtor asserts counterclaims. In this case, these two issues are intertwined and the answers require both legal analysis and appraisal of the facts of this case.

As to the first issue, the court has concluded that a general answer may be given that a claim based upon an unstayed [11] judgment as to which an appeal has been taken by the debtor is not the subject of a bona fide dispute. Once entered, an unstayed final judgment may be enforced in accordance with its terms and with applicable law or rules, even though an appeal is pending. See 11 Wright & Miller, Federal Practice & Procedure, §§ 2902–2903; and *United States v. Verlinsky,* 459 F.2d 1085, 1089 (5th Cir.1972). See also Fed.R.Civ.Pro. 62(a); Bankruptcy Rule 7062; and N.Y.C.P.L.R. § 5519. The filing of an involuntary petition is but one of many means by which a judgment creditor may seek to attempt collection of something upon its judgment.

It would be contrary to the basic principles respecting, and would effect a radical alteration of, the long-standing enforceability of unstayed final judgments to hold that the pendency of the debtor's appeal created a "bona fide dispute" within the meaning of Code § 303.[12] As the Fifth Circuit Court of Appeals has stated:

---

**10.** The term "final judgment" is used here in a generic sense. As is evident from the subsequent discussion, a determination of whether any particular decree should be treated as a "final judgment" requires careful analysis of factual and legal concerns.

**11.** If the judgment has been stayed, the claimant would appear to be precluded from joining in the involuntary petition, just as the claimant would be precluded from taking any other action to attempt collection on the judgment. But see *In re Henry,* 13 B.C.D. 388 (Bankr.S.D.Ohio 1985).

**12.** Drexler's argument also has a paradoxical quality. The filing of a petition by a debtor automatically stays pending actions by virtue of Code § 362. A debtor unable to afford an ap-

peal bond may file a Chapter 11 petition in order to be able to continue in operation pending the determination of the appeal. See, e.g., *In re Alton Telegraph Printing Co.,* 14 B.R. 238, 8 B.C.D. 457 (Bankr.S.D.Ill.1981) (Court denied motion by a judgment creditor seeking to dismiss Chapter 11 petition as filed in bad faith because debtor unable to obtain supersedeas bond to forestall execution filed in order to continue operations during pendency of appeal from a $9.2 million libel judgment. Court found debtor free to file to preserve its status as an ongoing concern and protect its employees and creditors while the claims against it were litigated.) Here Drexler is asserting the converse—that creditors have no right to institute a bankruptcy case even when there is no supersedeas bond and execution on the judgment has been unsuccessful.

"The judgment by which a court ends a cause does not hang in limbo pending appeal * * * "

*United States v. Verlinksy, supra* at 1089. Whether ultimate reversal of the petitioners' judgment should have any effect on the bankruptcy case is something that would have to be treated on a case by case basis. See, generally, D.M. Gordon, *Effect of Reversal of Judgment on Acts Done Between Pronouncement and Reversal,* Parts I and II, 74 The Law Quarterly Review 517 (Oct.1958) and Part III, 75 The Law Quarterly Review 85 (Jan.1959). See also Bankruptcy Code § 305. Consideration of the debtor's subjective good faith relative to the appeal simply is beside the point.[13]

■ However, this straight-forward general rule must still be applied to the facts of this case. The Money Judgment appeared, at the time of the filing of the involuntary petition, to be a partial final judgment, which is permitted by Fed.R.Civ. Pro. 54(b). It had never been stayed by the posting of a bond or otherwise, an appeal was pending from it[14] and an execution had been returned unsatisfied. Unfortunately, an additional complexity was created when on November 6, 1984, the Second Circuit held that the Money Judgment was improperly certified and was not final. In determining matters respecting the claims of the petitioners the court generally is to look at matters as they stood on the date the petition was filed. See, e.g., *In re Johnston Hawks, Ltd.,* 49 B.R. 823, 832

(Bankr.D.Ha.1985); 2 Collier on Bankruptcy (15th Ed.1985), ¶ 303.08[1]. On that date, the Money Judgment appeared to be an unstayed final judgment from which the debtor had taken an appeal. Nor does this court believe that treating the Money Judgment as final for the purpose of resolving one of the legal issues presented by this involuntary petition is to elevate form over substance.

The Second Circuit has held in *Lummus Co. v. Commonwealth Oil Refining Co.,* 297 F.2d 80, 89 (2d Cir.1961) that

"Whether a judgment, not 'final' in the sense of 28 U.S.C. § 1291, ought nevertheless be considered 'final' in the sense of precluding further litigation of the same issue, turns upon such factors as the nature of the decision (i.e., that it was not avowedly tentative), the adequacy of the hearing, and the opportunity for review. 'Finality' in the context here relevant may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again." 297 F.2d at 89.

Accord, *O'Reilly v. Malon,* 747 F.2d 820 (1st Cir.1984) (Held that as movant had been given a full opportunity to litigate its claim there was no injustice in treating the earlier proceeding as final so far as collateral estoppel was concerned.) There can be no doubt that the District Court's decree represented by the Money Judgment was not "tentative" and was intended by it to

---

**13.** The final judgment rule utilized obviates the need for any consideration of subjective good faith in this case. Exploration of the importance of a debtor's subjective intent to determination of the issues presented by an involuntary petition remains for another case on different facts.

**14.** As indicated at footnote 2, a dispute existed at one time as to whether the appeals were still pending at the time the involuntary petition was filed. Drexler has devoted pages to allegations that the petitioners, their counsel, the Trustee and his counsel, and the attorneys for English and Bellefonte engaged in a conspiracy after July 15, 1983, when the orders for relief were granted as to the Original Corporate Debtors, to ensure that the appeals taken from the Money and Sanctions Judgments would be dismissed

by the Second Circuit for lack of prosecution. The supposed purpose of the conspiracy was to enable the petitioners to file the involuntary petition against Drexler individually after the appeal had been dismissed. Drexler asserts that the Second Circuit's decision in *In re B.D. International Discount Corp., supra,* would have precluded the filing of the petition while the appeal was pending. Although this court does not agree with Drexler's reading of the *B.D. International* decision and would reach the same outcome relative to the effect of the pendency of an appeal from an unstayed judgment under the *B.D. International* standard or the potentially more restrictive test provided by the BAFJA amendment, this court views Drexler's allegations about the supposed conspiracy as legally irrelevant.

be final. Drexler had been given full opportunity to litigate and in the District Court's view had admitted liability for this amount in open court on more than one occasion.[15]

It is, however, Drexler's counterclaims which are central to his defense to the involuntary petition. The trial which had commenced on the involuntary petition concerned itself with the nature and substance of Drexler's alleged defenses and counterclaims. An alleged debtor generally may assert counterclaims in an effort to defeat the involuntary petition. See Bankruptcy Rule 1011(d) and Advisory Committee Note thereto. See also 2 Collier on Bankruptcy (15th Ed.1985), ¶ 303.27.

■ For the reasons which follow, the court finds that it may be said that as a general rule the debtor's assertion of counterclaims, even if of substance, does not render the petitioner's claim the subject of a bona fide dispute.[16] Counterclaims serve, if established, to work a diminution or set-off of the claim of the petitioning creditors, either as part of the Code § 303(b)(1) analysis of the amount of the petitioner's claim or as part of the Code § 303(h)(1) analysis of generally not paying, in which the amount of a petitioner's claim may be relevant. The BAFJA amendment has not altered this established treatment of counterclaims. See *Harris v. Capehart-Farnsworth Corp.*, 225 F.2d 268, 270 (8th Cir. 1955) (alleged bankrupts should be allowed to establish set-offs and counterclaims which they are lawfully entitled to use in diminunition and extinguishment of petitioning creditor claims); *Hirsch v. Archer-*

*Daniels-Midland Co.*, 288 F.2d 683, 684–5 (8th Cir.1961) (Counterclaims can be asserted in answer to defeat claims of involuntary petitioning creditors); *Georgia Jewelers, Inc. v. Bolova Watch Co.*, 302 F.2d 362, 367 (5th Cir.1962) (Counterclaims have a limited utility in the bankruptcy scheme and that is such may be asserted to reduce either dollar amount of claims, or the number of creditors below the statutory minimum for involuntary relief); *In re Kreidler Import Corp.*, 4 B.R. 256, 259 (Bankr. D.Maryland 1980) (A bona fide counterclaim which exceeds the amount of a claim extinguishes the claim for the purposes of filing involuntary petition); *In re Tampa Chain Co., Inc.*, 35 B.R. 568, 577 (Bankr.S. D.N.Y.1983) (assertion of counterclaim does not make claim contingent and paucity of showing by debtor on merits of counterclaim affords no reason for vitiating claim of petitioner as to status as petitioning creditor).

The rejection of Drexler's argument that the asserted counterclaims create a bona fide dispute does not resolve the matter. This court, consistent with the case authorities, must still evaluate the counterclaims. For several reasons, Drexler's asserted counterclaims must be considered to be without value. The Sanctions Judgment precludes Drexler from raising in this court the matters raised by his answer and counterclaims that were struck with prejudice. Drexler has urged that the District Court erred in striking his answer and counterclaim as a sanction, and that the sanction was excessive. This court must accept the Sanctions Judgment as it is, right or

---

**15.** In this court, Drexler has asserted that he never intended to admit to any personal, as opposed to corporate, liability in the District Court Action. Drexler states that he had made a motion seeking to have himself, individually, dismissed from the District Court Action on the grounds that he had no personal liability and that motion was never acted on. At the outset of the District Court Action, an order had been entered terminating Drexler's tribunal authority. Alter ego is one theory available to justify imposition of personal liability in appropriate circumstances and judgment had been sought against Drexler on that basis. In any event, because of the Sanctions Judgment, see discussion *infra*, Drexler cannot assert the defense of

lack of personal liability any more than he can raise any other defense or the counterclaims.

**16.** But see *contra, In re Henry, supra*, 13 B.C.D. at 390.

Of course, the opposite conclusion must be reached with respect to defenses. Defenses go to the heart of a petitioner's claim. In this case, the combined effect of the Money and Sanction Judgments is to obviate Drexler's defenses and his counterclaims and the issue is without practical significance. Thus it is unnecessary to consider the extent to which any of the defenses or counterclaims would be barred solely by the Money Judgment.

wrong, and is not free to act as a kind of super-appellate court to correct what it may see as the errors or omissions of other courts. See *In re Mastercraft Record Plating, Inc.*, 39 B.R. 654, 658 (D.C.S.D.N.Y.1984) ("There is no authority * * * sanctioning a bankruptcy court's consideration *de novo* of an issue which has been presented to or decided by a state court having jurisdiction over the dispute."), *reversing* 32 B.R. 106 (Bankr.S.D.N.Y.1983). This court can and should review the procedural posture of the District Court Action at the time the involuntary petition was filed. At that point the District Court had entered the Sanctions Judgment, leaving open only issues relative to amounts which it remitted to a magistrate for assessment. Drexler had appealed from it. There exists no indication that at the time the involuntary petition was filed the District Court was about to change its mind about the imposition of sanctions, nor does the District Court's handling of Drexler's subsequent motions for reconsideration so indicate. The Sanctions Judgment therefore must be taken to preclude relitigation of the issues in this court. See *Lumus Co. v. Commonwealth Oil Refining Co., supra.* Compare *Chemetron Corp. v. Business*

*Funds, Inc.,* 682 F.2d 1149, 1190–91 (5th Cir.1982); *Zdanak v. Gidden Co., Durkee Famous Food Division,* 327 F.2d 944, 955 (2d Cir.1964).

■ At trial on the involuntary petition, Drexler's attorney advised that he would offer an expert on antitrust law to testify that a cause of action existed. See 4/6/84 Transcript at 58–59.[17] To the extent Drexler's asserted counterclaims are based on the antitrust laws, they cannot be raised as counterclaims to the involuntary petition in any event. *In re Bichel Optical Laboratories, Inc.,* 299 F.Supp. 545, 549. See also Advisory Committee Note to Bankruptcy Rule 1011(d).[18]

■ To the extent that Drexler's counterclaims are not predicated on an antitrust violation, they are rejected because their resolution cannot be determined without unduly delaying the decision on the petition. *In re Bichel Optical Laboratories, Inc., supra.* Despite this court's grant of permission to pursue the District Court Action and appeal and the pendency of this motion for a substantial period of time, Drexler has been unable to obtain either a reversal of the Sanctions Judgment or its reopening.[19] Any further delay is simply unwarranted.

17. No expert testified during the day of trial held. Drexler's papers in opposition to the summary judgment motion do not contain any affidavit from such an expert.

18. Indeed, it would appear that the District Court properly awarded the Money Judgment in advance of resolving any antitrust claims as that claim was not a defense to bordereaux amounts admittedly due. See discussion in *In re Bichel Optical Laboratories, Inc., supra,* 299 F.Supp. at 549.

19. From the outset this court suggested that the parties pursue the then pending appeals to the Second Circuit. It was apparent that, if the Second Circuit affirmed the Sanctions Judgment and did not find the sanction excessive or inappropriate Drexler's defense to the involuntary petition would fail. As it happened, no answer was given by the Second Circuit.

As the facts of this case make apparent, it is essential to prompt and orderly resolution of involuntary petitions to review matters as they stood on the date the involuntary petition was filed, and not as they may develop thereafter. Even a final judgment from which no appeal is pending is subject to revision. See Fed.R.Civ.

Pro. 60(b) and Bankruptcy Rule 9024. Post-filing events are of limited relevancy and their main use should be to ensure that the result reached is not manifestly unjust. In the time since the involuntary petition was filed, Drexler's argument that the two judgments were not final has evolved from the assertion of lack of finality due to the pendency of an appeal to lack of finality within the meaning of 28 U.S.C. § 1291. Following the Second Circuit's remand of the appeals, Drexler made a motion before the District Court for reconsideration of the Money and Sanctions Judgments that is still pending.

It would appear that had an appropriate request been made to the District Court after the involuntary petition was filed a certification of an involuntary appeal from the Sanctions Judgment might have been obtained under 28 U.S.C. § 1292(b) and an appeal properly pursued. Further, either a certification might also have been obtained as to the Money Judgment or that Judgment could have been amended and an appropriate Fed.R.Civ.Pro. 54(b) finding made and an appeal prosecuted. Cf. *In re Frigitemp Corporation (Trustee v. Lefrak, et al.),* 781 F.2d 324, 328, (2d Cir.1986) ("Had the Trustee simply

Drexler's Rule 56(f) motion directed at obtaining discovery relative to the counterclaims can and will be denied. It is evident that additional exploration of the factual basis of the counterclaims is unnecessary as the court has found them barred as a matter of legal principle.

■ Under Bankruptcy Code § 303(h)(1), the court can enter an order for relief on a contested petition only when it finds that the debtor is generally not paying such debtors' debts as such debts become due unless such debts are the subject of a bona fide dispute. For summary judgment to be granted there must be no genuine issue as to any material fact such that it is apparent that the moving party is entitled to judgment as a matter of law. See, e.g., *Burtnieks v. City of New York*, 716 F.2d 982, 985 (2d Cir.1983). In determining whether to grant summary judgment the court should resolve all doubts in favor of the party opposing the motion. See, e.g., *Heyman v. Commerce & Industry Co.*, 524 F.2d 1317 (2d Cir.1975).

Drexler opposes the petitioners' request for entry of an order for relief claiming there are genuine issues of material fact which preclude granting summary judgment against him. Drexler supports his rebuttal through his recurrent argument that the petitioners' judgments are the subject of a bona fide dispute and that the judgments against him are not final. Drexler asserts that he has a right to offset any liability to petitioners with his alleged counterclaims and, that as petitioners' claims are not allowable, thus he is not delinquent in generally paying his debts. These arguments are succinctly summarized by Drexler as follows:

"The issue of not paying debts as they generally mature in this unfortunate bankruptcy *is no more than the issue* of whether under these circumstances, where I have meritorious counterclaims against petitioning creditors I should have to pay the amount of their default judgments through a bankruptcy pro-

ceeding as long as the amount of such judgment is a non-allowable claim by reason of my offsetting meritorious counterclaims, which are still in litigation. * * *" (Emphasis added.) Drexler Affidavit sworn to July 6, 1984 at ¶ 3.

It is clear from the above that Drexler raises no issues of material fact which preclude entry of an order for relief other than whether he owes debts to the petitioners which are neither subject to offset nor subject to a bona fide dispute. As the court has resolved these issues adversely to Drexler, there are no issues of material fact precluding summary judgment and an order for relief may be entered.

Some courts, at least prior to the BAFJA amendment, have proposed use of a balancing test in which the Bankruptcy Court is to balance the interests of the creditors against those of the debtor before entering an order for relief on an involuntary petition if the debtor disputes the petitioners' claims. See *In re Dill*, 731 F.2d 629, 632 (9th Cir.1984). See also *In re R.N. Salem Corp.*, 29 B.R. 424, 429 (D.C.S.D.Ohio 1983) ("We find that a balancing analysis which weighs the interests of the creditors against those of the debtor the proper approach in determining whether a disputed debt should be included. * * * Congress intended the Bankruptcy Code as a shield for debtors, not a sword for creditors. On the other hand, it is equally apparent that it was not the intention of Congress that a debtor be able to avoid bankruptcy by merely disputing the existence or amount of a claim. Furthermore, creditors are entitled to a speedy determination so that if the debtor is generally not paying its debts the creditors' rights can be protected and the debtor can be prevented from wasting creditors' assets."). Although the Second Circuit has not directed use of a balancing test as a rule of decision, its approach to factual analysis has a similar purpose. See *In re B.D. International, Ltd., supra.* Because of the paucity of cases construing

taken care to determine whether all of the relief he requested, if not expressly denied, had in fact been granted by the court, he could have moved

to alter the judgment within the time periods provided by Rule 59(e) or Rule 60(b).")

the BAFJA amendments, it is appropriate for this court to use a balancing analysis as a means of determining whether the application of general rules to the facts in a given case has reached a result on an unduly formalistic basis without regard to broader policy considerations evidenced in the sparse legislative history to the BAFJA amendment. The petitioners' claims derive from premiums admittedly collected and never remitted. The involuntary petition against Drexler had been preceded many months previously by involuntary petitions against six of his corporate entities. Drexler's tribunal authority had been terminated long before those petitions were filed. The book of insurance business had been sold by the Trustee of the Original Corporate Debtors for an amount plainly insufficient to satisfy the claims of the petitioners or other judgment creditors. The Trustee of the Original Corporate Debtors had also instituted an action against Drexler and his wife, Violet Drexler,[20] for conversion, corporate waste and mismanagement, breach of fiduciary duty, fraudulent conveyance and fraudulent transfer and had obtained a prejudgment attachment against Violet Drexler. See *In re Feit & Drexler, Inc., et al. (Trustee v. Drexler)*, 760 F.2d 406 (2d Cir.1985), *affirming*, 42 B.R. 355 (D.C.S.D. N.Y.1984). Indeed, the Trustee located the proverbial Swiss bank accounts in Violet Drexler's name. At some point in the downward spiral of a business enterprise, the creditors are entitled to call a halt. Here the downward spiral had been going on for well over a year before the involuntary petition against Drexler was filed. This court finds that Drexler's creditors are not required to wait any longer and the balance tips plainly in favor of the creditors.

The court will therefore sign an order for relief in this case. It is so ordered.

---

**20.** Drexler has asserted that he and Violet Drexler are now divorced.