**In re RAYMARK INDUSTRIES, INC., Debtor.**

**Bankruptcy No. 89–20233T.**

United States Bankruptcy Court, E.D. Pennsylvania.

May 2, 1989.

Michael L. Temin, Wolf, Block, Schorr & Solis–Cohen, Philadelphia, Pa., for petitioning creditors.

William A. Slaughter, Ballard, Spahr, Andrews & Ingersoll, Philadelphia, Pa., for Raymark Industries, Inc.

## OPINION

THOMAS M. TWARDOWSKI, Bankruptcy Judge.

Before the court is a motion filed by Raymark Industries, Inc. ("Raymark") requesting that we dismiss the involuntary Chapter 11 bankruptcy petition filed against it by sixty-eight creditors on the ground that these creditors lack standing under 11 U.S.C. § 303(b)(1). Because we find that three or more of the petitioning creditors hold claims against Raymark which are not contingent as to liability or the subject of a bona fide dispute, we must deny Raymark's motion to dismiss. A brief recitation of the relevant facts follows.

This involuntary case was instituted on February 10, 1989, when four creditors ("original creditors") who hold judgments against Raymark arising out of asbestos related personal injury litigation filed an involuntary petition against Raymark. On February 22, 1989, Raymark filed the instant motion to dismiss. Several hearings originally scheduled on the motion were continued when the remaining sixty-four creditors, who also hold claims against Raymark arising out of asbestos related personal injury litigation, intervened in this proceeding as petitioning creditors. The intervening creditors include three people who hold judgments against Raymark, Manuel Lucero ("Lucero") and Vincent and Helen Passentino ("the Passentinos"), and sixty-one creditors who allegedly hold

claims arising from settlements reached with Raymark that were never paid.

We begin our analysis with a discussion of the applicable law. It is well settled that to have standing to file an involuntary petition, a creditor must hold a claim against the alleged debtor that is not contingent as to liability or the subject of a bona fide dispute. 11 U.S.C. § 303(b)(1). When the alleged debtor has twelve or more creditors,[1] at least three creditors must join in the involuntary petition, and their claims must aggregate at least $5000.00 more than the value of any lien held by any of the petitioning creditors on property of the alleged debtor. 11 U.S.C. § 303(b)(1).[2]

We turn first to the four original creditors. Each of these creditors hold judgments against Raymark which were originally entered on December 8, 1988 by the District Court for the Eastern District of Virginia. Thereafter, Raymark filed motions to amend these judgments, but did not file motions under Fed.R.Civ.P. 62(b) requesting that the judgments be stayed pending disposition of the motions to amend. On February 1, 1989, the District Court entered an order amending the judgments. The original creditors then filed this involuntary petition on February 10, 1989, less than ten days after the District Court order was entered amending the judgments.

We have previously held that a creditor who holds a stayed judgment holds a claim which is subject to a bona fide dispute, and hence, lacks standing to institute an involuntary bankruptcy case. *In re Raymark Industries, Inc.*, Bankr. No. 88–21315T (Bankr.E.D.Pa. Sept. 22, 1988). *See also, In re Schiliro*, 64 B.R. 422 (Bankr.E.D.Pa.1986); *In re Drexler*, 56 B.R. 960 (Bankr.S.D.N.Y.1986). The question becomes, therefore, whether, as of February 10, 1989, the date the involuntary petition was filed, the judgments held by

---

1. The parties do not dispute the fact that Raymark does indeed have 12 or more creditors.

2. Instantly, all of the petitioning creditors profess to hold only unsecured claims against Ray-

mark. Hence, the value of their claims must aggregate $5000.00 in order to meet the dollar requirement of 11 U.S.C. § 303(b)(1).

the original creditors were stayed as a result of Fed.R.Civ.P. 62(a). Because we conclude that the Rule 62(a) ten day stay applied to the February 1, 1989 order entered by the District Court, we find that the original creditors lacked standing to file this involuntary petition on February 10, 1989.

Fed.R.Civ.P. 62(a) provides that a judgment shall be stayed automatically for ten days after it is entered. The term "judgment" is defined in Fed.R.Civ.P. 54(a) to include "a decree and any order from which an appeal lies." Since the February 1, 1989 District Court order is such an order, the Rule 62(a) ten day stay applied. Accordingly, the original creditors lacked standing to file the involuntary petition on February 10, 1989.[3]

We next address the standing of the sixty-four intervening creditors.[4] To clarify our discussion, we will categorize these creditors into the following groups: (1) those who hold judgments against Raymark (i.e., Lucero and the Passentinos), (2) those who settled claims with Raymark but who had not, as of the date the involuntary petition was filed, delivered necessary paperwork to Raymark to enable Raymark to process their claims, and (3) those who settled claims with Raymark and who had delivered the necessary paperwork to Raymark as of the date the involuntary petition was filed.

Lucero holds a $60,000.00 judgment against Raymark. The judgment was entered on January 20, 1989 and the Rule 62(a) ten day stay expired on February 3, 1989. Although Raymark intended to appeal the judgment and file a supersedeas bond to stay the judgment, no supersedeas bond had been filed as of February 10, 1989, the date the involuntary petition was filed. Accordingly, as of February 10, 1989, Lucero held an unstayed judgment against Raymark and, therefore, had standing to file an involuntary petition. *In re Raymark Industries, Inc., supra; In re Schiliro, supra; In re Drexler, supra.*[5]

The Passentinos hold a judgment against Raymark which was entered on November 10, 1988, and which includes both compensatory and punitive damages.[6] The Rule

---

3. The original creditors argued that it was necessary for Raymark to request a stay under Fed.R.Civ.P. 62(b) in order for the February 1, 1989 order to be protected. We disagree. The stay which can be requested under Rule 62(b) only remains in effect pending the disposition of post-trial motions. Once the post-trial motions are decided, the Rule 62(b) stay expires. Hence, while the Rule 62(b) stay would have protected the December 8, 1988 judgment until the motion to amend the judgment was decided on February 1, 1989, it would not have protected the February 1, 1989 order. If the Rule 62(a) stay was interpreted in the manner advanced by the original creditors (i.e., as inapplicable to an order disposing of post-trial motions), even a party who was granted a Rule 62(b) stay pending the disposition of post-trial motions would be helpless once the post-trial motions were decided, since a supersedeas bond cannot be filed until a notice of appeal is filed. *See,* Fed.R.Civ.P. 62(d).

4. Raymark attacks the joinders filed by the 64 intervening creditors on the ground that they were not properly verified. Specifically, Raymark complains that the verifications were signed by the intervening creditors' attorneys and not the intervening creditors themselves. We find Raymark's argument erroneous as to Lucero and the Passentinos, since they signed the verifications attached to their joinders themselves, and unconvincing as to the remaining 61

intervening creditors. As Collier's notes, an attorney representing petitioning creditors may sign and verify an involuntary petition if authorized by the client to do so and if he has personal knowledge of the facts, especially if time is of the essence. 2 *Collier on Bankruptcy,* ¶ 303.15 at 303–79 (15th Ed.1988). As time was of the essence in this case, we find that the remaining 61 joinders were properly verified.

5. As Lucero's judgment against Raymark exceeds $5000.00, the requirement that the petitioning creditors' claims aggregate $5000.00 has been met. 11 U.S.C. § 303(b)(1). Hence, it is not necessary to evaluate the amount of the remaining intervening creditors' claims. All that is necessary to defeat Raymark's motion to dismiss is that at least two more intervening creditors be found to qualify as petitioning creditors.

6. It is not entirely clear from the record whether the Passentinos were awarded judgments individually or jointly. A copy of the docket in the Passentinos' lawsuit reflects only that judgment was entered in favor of the Passentinos in the amount of $150,000.00 in compensatory damages and $1,000,000.00 in punitive damages. Hence, we assume that the judgment was entered in favor of the Passentinos jointly. As a result, we will count the Passentinos as one

62(a) ten day stay expired on November 25, 1988. Thereafter, Raymark requested that the punitive damages portion of the judgment be stayed, and an order was entered on January 10, 1989 staying the punitive damages portion of the judgment. Raymark claims that it also filed a motion to amend the compensatory damages portion of the judgment and introduced an *unsigned* and *undated* copy of the motion to amend into evidence. No certified copy of the docket reflecting that a motion to amend had been filed was offered into evidence nor did Raymark introduce any evidence to establish that it requested a Rule 62(b) stay pending disposition of the motion to amend, which would have been required since the Rule 62(a) stay expired on November 25, 1988. As such, we must find that the compensatory damages portion of the Passentinos' judgment was not stayed as of February 10, 1989, and that the Passentinos had standing to file an involuntary petition as of that date. *In re Raymark Industries, Inc., supra; In re Schiliro, supra; In re Drexler, supra.*

■ We now evaluate the standing of the intervening creditors who settled their claims with Raymark but who had not, as of the date the involuntary petition was filed, delivered necessary paperwork, such as releases and settlement verification forms, to Raymark.[7] Because we find that these intervening creditors hold claims that are contingent as to liability, we hold that they lack standing to file an involuntary petition.

One of the most accepted definitions of a claim that is "contingent as to liability" as that phrase is used in 11 U.S.C. § 303(b)(1) was coined by the Bankruptcy Court for the Southern District of Texas, which stated:

> claims are contingent as to liability if the debt is one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor and if such triggering event or occurrence was one reasonably contemplated by the debtor and creditor at the time the event giving rise to the claim occurred.

*In re All Media Properties*, 5 B.R. 126, 133 (Bankr.S.D.Tex.1980), *aff'd*, 646 F.2d 193 (5th Cir.1981). *See also, In re Turner*, 32 B.R. 244, 247 (Bankr.Mass.1983); 2 *Collier on Bankruptcy*, ¶ 303.08 at 303–32.

Instantly, we conclude that Raymark's duty to pay the settlements was contingent upon the creditors first submitting releases, settlement verification forms and other necessary items of paperwork to Raymark. As these items of paperwork were not submitted as of February 10, 1989, we find that these creditors lacked standing to file an involuntary petition as of that date.

■ We now address the standing of those intervening creditors who settled their claims [8] with Raymark and submitted

---

creditor. This will not prejudice the petitioning creditors' position since we also find that several of the remaining intervening creditors have standing, and therefore, the three creditor requirement of 11 U.S.C. § 303(b)(1) is met. *See,* discussion, *infra.* We further note that the amount of the Passentinos' judgment is not free from doubt on the record before us since the Passentinos' joinder alleged that they held a judgment against Raymark in the amount of $9000.00. However, as noted in note 5, *supra,* the amount of the Passentinos' claim is not relevant to this proceeding since the $5000.00 requirement of 11 U.S.C. § 303(b)(1) has already been met.

7. The record reflects that eight creditors comprise this group.

8. Raymark challenges the allegations made by four of these creditors that settlements in fact were reached. As to Packer, Gantt and Foster,

we conclude that Raymark introduced sufficient documentary evidence to establish that these creditors received jury verdicts in their favor on their claims. Raymark received a stay of the Packer judgment by posting a supersedeas bond on January 19, 1989. Therefore, Packer's claim was the subject of a bona fide dispute as of February 10, 1989, and Packer lacked standing to file this petition. *In re Raymark Industries, Inc., supra; In re Schiliro, supra; In re Drexler, supra.* The judgments held by Gantt and Foster were reduced to zero prior to February 10, 1989, due to settlements reached with other defendants. Accordingly, neither Gantt nor Foster were creditors of Raymark and they therefore lacked standing to file an involuntary petition. As to Bryant, Raymark introduced no evidence, documentary or otherwise, to refute Bryant's claim that he had reached a settlement with Raymark. Therefore, we shall include Bryant with the remaining intervening creditors who

the necessary items of paperwork to Raymark prior to the date the involuntary petition was filed.[9]  Raymark argues that these creditors lack standing either because they never made a formal demand for payment or because payment was not yet due.  There is no requirement that a creditor first make a formal demand for payment in order to qualify as a petitioning creditor in an involuntary case.  Additionally, it is well established that creditors who hold unmatured claims have standing to file an involuntary petition.  *See, In re Win–Sum Sports, Inc.*, 5 C.B.C.2d 248 (Bankr.Conn.1981); 2 *Collier on Bankruptcy,* ¶ 303–08 at 303–28.  Accordingly, we conclude that, as of February 10, 1989, these creditors held claims against Raymark which were not contingent as to liability or the subject of a bona fide dispute and that they, therefore, had standing to file this involuntary petition.  As we have found that three or more of the petitioning creditors hold claims against Raymark which are neither contingent as to liability nor the subject of a bona fide dispute, we must deny Raymark's motion to dismiss.

See also, Bkrtcy., 97 B.R. 831.

settled their claims with Raymark and submitted all necessary paperwork by February 10, 1989.

9.  The record reflects that, after excluding Packer, Gantt and Foster, 49 creditors comprise this group.