**In re Jennifer GRABER, aka Jennifer Schaefer, Debtor.**

No. 04–17844DWS.

United States Bankruptcy Court,
E.D. Pennsylvania.

Dec. 3, 2004.

Steven K. Eisenberg, New Hope, PA, for debtor.

### MEMORANDUM OPINION

DIANE WEISS SIGMUND, Chief Judge.

Before the Court is the contested Chapter 7 involuntary petition filed against Jennifer Graber ("Mrs. Graber") by petitioning creditors Morgan Williams ("Williams"), Kimberly Weber ("Weber") and Rhonda Keller ("Keller" and together the "Petitioners"). An evidentiary hearing was held and all memoranda have been filed. However, as noted below, given the extreme consequence of this matter on Mrs. Graber, I will defer my ruling until the record is supplemented in accordance with the reasoning set forth below.[1]

### BACKGROUND

On or about March 8, 2004 Petitioner Williams secured a judgment in the amount of $49,500 by default against Mrs. and Mr. Graber. Exhibit G–3. On or about May 13, 2004 Petitioner Keller secured a judgment in the amount of $36,000 by default against Mrs. and Mr. Graber. Exhibit G–1. The judgments arose in connection with claims for construction work which K & G Construction ("K & G") failed to complete. According to Mr. Graber's testimony at the § 341 meeting in his own Chapter 7 case filed on November 28, 2003, K & G is a sole proprietorship by which Mr. Graber performed construction on residential premises.[2] Mrs. Graber testified that she was employed by K & G but contends she was not involved in the construction activities and therefore is not responsible for the work Mr. Graber failed to perform on the jobs.[3] Accordingly,

---

1. The Petitioners' counsel stated that he had been unable to secure the appearance of Debtor's husband Karl Graber ("Mr. Graber") since he was incarcerated, and he sought an adjournment until he could be brought to court. As I was not convinced based on the proffer made that Mr. Graber's appearance was necessary, I held the hearing with leave for Petitioners to file a motion by October 22, 2004 to secure the appearance. However, rather than comply with the Court's directive, Petitioners' counsel simply has repeated his request to secure the testimony of Mr. Graber in his brief. I have never disallowed the testimony of Mr. Graber but held that any order to secure his appearance must be requested by motion since it is only upon a showing of need that I would order the state to bring him to Court. Presumably Mr. Graber's testimony relates to the issue of whether Graber is paying her debts as they come due, an issue not reached at this juncture. Should I find there to be standing for this petition and should Petitioners still have the need and desire to secure Mr. Graber's appearance, the appropriate motion must be promptly filed or the request will be considered waived.

2. According to Mr. Graber's § 341 testimony, his construction income, whether from K & G or from work done for his brother, supplemented his W–2 income from Otis Elevators and was unreported. K & G has ceased business, thereby reducing the family's ability to fund certain obligations such as payments for Debtor's Suburban vehicle at $780 per month.

3. Petitioners have presented evidence intended to refute that position. See Exhibits P–4 (application for secured credit dated 12/6/00 showing Debtor as self employed by K & G

while she was named as a defendant and default judgments were entered against her, she has contested them by filing petitions to open and/or strike both judgments.[4] The petitions to strike or open were not submitted into evidence nor did Mrs. Graber testify about the circumstances that allowed defaults to be taken in each case. Nor is there any evidence that Mrs. Graber sought or the state court granted a stay of execution on the judgments. However, before those matters could be heard, Petitioners filed the involuntary bankruptcy case on June 7, 2004,[5] and the dockets evidence that filing but no further state court proceedings on the pending petitions.

Mr. Graber, for his part, filed his own voluntary petition under Chapter 7 on November 28, 2003. Exhibit P–1. He is represented in that case by John M. Kenney, Esquire who also represents Debtor in the state court litigation with Petitioners but not in connection with this involuntary bankruptcy. Mrs. Graber testified that while she accompanied Mr. Graber to his bankruptcy interview with Kenney, she found no reason to file with him. It is undisputed that the home in which the Mrs. and Mr. Graber reside is owned solely by Mrs. Graber, and the logical inference of that fact is that the existence of that asset is the motivation for the decision not to place Mrs. Graber in bankruptcy and the decision by the Petitioners to seek to alter that outcome. Mrs. Graber is not presently employed and her sole source of support is Mr. Graber who represented at the time of his bankruptcy filing that he was employed by Otis Elevators as a technician then and for the prior five years and earns net monthly income of $3,553.33. *Id.* All the expenses of the family of six, including the mortgage of $810.00 on the Pumpkin Road residence owned by Mrs. Graber, are therefore borne by Mr. Graber. They aggregate $3,520.00 per month according to his unamended Schedule J but may not be accurate as of today.

More significantly, the family income is not accurate as of today since in February 2004, Mr. Graber who had been suffering sporatic mental illness since the prior September had a breakdown which put him out of work and on a reduced disability income of $300 per month until May 2004. During this period the Grabers' routine bills were not paid and Mrs. Graber has made arrangements with creditors to cure the outstanding obligations which she indicates she is keeping to the best of her ability. However, her success in so doing is further compromised by the fact that Mr. Graber is now incarcerated and while he has been on work release since August

and identifying herself as "owner"); Exhibit P–5 (same dated 10/2/01). The issue of Debtor's liability for the debts of K & G Construction is not presently before me except insofar as I must determine whether the claims of Keller and Williams, arising from the business but reduced to judgment against Debtor and being challenged, qualify for the purpose of commencing an involuntary petition.

4. The Williams and Keller judgments were entered on March 8, 2004 and May 13, 2004 respectively. A petition to open and/or strike judgment was filed in Williams on April 8, 2004. In Keller, an answer to the Complaint was filed on May 17, 2004 followed by the petition to open and/or strike judgment on May 21, 2004. This information was derived from the state court litigation dockets. Exhibits G–1 and G–3.

5. It is conceded that Debtor has fewer than twelve creditors. Thus, the joinder of Weber who has not secured a judgment against Debtor is not necessary as only one petitioner is required in this case. 11 U.S.C. § 303(b)(2). Whether the two judgment creditors, Williams and Keller have standing to commence this case by reason of the Debtor's unresolved contest of their judgments is at issue in this matter and will be addressed below.

6th, the state receives his pay check and releases only 40% to her. Accordingly, she is behind on paying certain bills. *See* Exhibit P–8 (transaction report of the Farm & Home Oil Company showing current account balance of $1,112.66.) One obligation that remains unaffected by these events is the mortgage which remains current. Her parents have assisted with the bills but apparently that has been insufficient to allow her to keep current with her expenses, including her loan for the Suburban which is in arrears.

## DISCUSSION

 In order to commence an involuntary petition in this case where there are fewer that twelve creditors, one petitioner must hold a claim that is not contingent and not the subject of a bona fide dispute.[6] It is clear that the claims held by Williams and Keller are not contingent. A liability is contingent if the debtor's legal duty to pay does not come into existence until the occurrence of a future event and the future occurrence was within the contemplation of the parties when the obligation was created. *In re Norris*, 183 B.R. 437, 451 (Bankr.W.D.La.1995) (*quoting In re Sims*, 994 F.2d 210, 219 (5th Cir.1993)). *See also In re Trimble*, 339 F.2d 838, 844 (3d Cir.1964). As noted by the *Norris* court, once a judicial finding of liability occurs and a judgment is entered, the issue of contingency is foreclosed. *Id.* (citing cases). What is less clear is whether a claim reduced to judgment will be held to be the subject of a bona fide dispute where the Debtor has advanced a post-judgment motion to strike or open.

 A claim is in bona fide dispute if there is a substantial issue of material fact that bears on the debtor's liability, or a substantial contention as to the application of law to the facts. *B.D.W. Associates, Inc. v. Busy Beaver Building Centers, Inc.*, 865 F.2d 65, 66 (3d Cir.1989). The initial burden lies with the petitioner to establish a *prima facie* case that there is no bona fide dispute. *Platinum Financial Services Corp. v. Byrd (In re Byrd)*, 357 F.3d 433, 438 (4th Cir.2004). The Petitioners claim they easily meet their burden by the acknowledged judgments lodged against the Debtor. They argue that a judgment entered in a state court proceeding is a non-contingent claim that is not the subject of a bona fide dispute for purposes of an involuntary petition, *citing* to *Norris, supra; In re Smith*, 123 B.R. 423 (Bankr.M.D.Fla.1990) and *In re Schiliro*, 64 B.R. 422 (Bankr.E.D.Pa.1986). Supplemental Brief in Support of Petitioner's Request for Entry of Order for Relief at 2. I agree that evidence of these unstayed judgments has met Petitioners' burden. However, agreeing with the Fourth Circuit in the *Byrd* case, this conclusion does not end the analysis. I am not persuaded that the cases cited by Petitioners for the proposition that an unstayed judgment, even if being challenged by appeal or as here by a

---

**6.** Section 303(b) provides in pertinent part:

(b) An involuntary case against a person is commenced by the filing with the bankruptcy court of a petition under chapter 7 or 11 of this title—

(1) by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute, or an indenture trustee representing such a holder, if such claims aggregate at least $10,000 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims;

(2) if there are fewer than 12 such holders, excluding any employee or insider of such person and any transferee of a transfer that is voidable under section 544, 545, 547, 548, 549, or 724(a) of this title, by one or more of such holders that hold in the aggregate at least $10,000 [FN1] of such claims;

motion to open or strike, can never be the subject of a bona fide dispute.[7] Rather the burden then shifts to the Debtor to demonstrate the existence of a bona fide dispute.

The Debtor responds that a creditor that holds a stayed judgment holds a claim that is subject to bona fide dispute, citing *In re Raymark Industries, Inc.*, 99 B.R. 298 (Bankr.E.D.Pa.1989). Memorandum of Jennifer Graber at 3. This argument belies the facts of the case since there is simply no evidence that the Petitioners' judgments have been stayed. Not surprisingly, the Petitioners respond that the 10 day stay of a federal judgment such as the one entered in *Raymark* is distinguishable. Although Mrs. Graber's argument is flawed by the erroneous premise it advances, it does not follow that the unique facts of this case may not give rise to a further exception from the general rule articulated in *Drexler*.

In *In re Prisuta*, 121 B.R. 474 (Bankr. W.D.Pa.1990), the court found no fault with the general principle that a claim based on an unstayed judgment as to which an appeal was pending was not subject to bona fide dispute but found it inappropriate to apply in that case. *Prisuta* involved two default judgments and one taken by confession. The *Prisuta* court observed that few cases have dealt with the question of whether a claim which arises out of a judgment is subject to bona fide dispute but those that have considered the question have relied on *Drexler* which as noted above involved hearings before the judgments were entered and the debtor had admitted his liability at one of them. Finding that the debtors in *Prisuta* raised genuine issues of material fact with respect to their liability despite the uncontested, unstayed, unappealed judgments of record, the court made an exception based on the "specific facts" and found there to be bona fide disputes embodied in the judgments. While satisfactorily distinguishing *Drexler* on its facts, *Prisuta* presents no analytical framework for its conclusion and thus offers little guidance for future cases.[8]

The recent decision of the Fourth Circuit Court of Appeals in *Platinum Financial Services Corp. v. Byrd (In re Byrd)*, 357 F.3d 433, 438 (4th Cir.2004), while ultimately finding a judgment not to be in bona fide dispute, rejected the notion that the existence of an unstayed judgment being appealed without more necessarily dic-

---

**7.** *Norris* notes that the overwhelming majority of courts have found that claims based on final judgments are not subject to a bona fide dispute and proceeds to support that statement with a litany of cases so holding. Notably *Norris* involved judgment taken after the presentation of evidence as did *In re Drexler*, 56 B.R. 960 (Bankr.S.D.N.Y.1986), the authority relied upon by *Schiliro, supra* (a case involving a confessed judgment). *Smith* merely states that a state court judgment is not the subject of a bona fide dispute but gives no indication as to how the judgment was secured. As the judgments in this case were secured by default and were the subject of motions to strike or open at the time of the bankruptcy filing, these cases are inapposite. Notwithstanding that fact, the basic principle that an unstayed judgment cannot be the subject of a bona fide dispute has been applied with a broad brush to judgments taken without an evidentiary hearing. *See, e.g., In re Everett*, 178 B.R. 132 (Bankr.N.D.Ohio 1994) (unappealed confessed judgment with pending motion to vacate); *Schiliro, supra* (confessed judgment).

**8.** Indeed the *Norris* court was unpersuaded by *Prisuta*, finding that it was an aberration in the law and very fact specific. It noted that the claims at issue resulted from a default judgment and a confession of judgment and as such the court "strained" for a result favorable to the debtors. *Norris*, 183 B.R. at 454.

tated the outcome[9] notwithstanding *Norris* and *Drexler.* The bankruptcy court had concluded that the unstayed judgment could be enforced even though an appeal was pending, and as such, the filing of an involuntary petition was but one of the many means the creditor could utilize to collect its judgment. On appeal, the district court reversed, concluding that a bona fide dispute can exist as to an unstayed judgment on appeal because, notwithstanding the creditor's enforcement right, the judgment might have no preclusive effect under Maryland state law. *Id.* at 437. On further review, the circuit court reversed the district court. According to that court, the issue was not whether *Byrd* was precluded from litigating additional issues that should have been raised in the suit which gave rise to the judgment but whether the appeal raised genuine disputes. By inquiring into the genuineness of Byrd's appeals, the bankruptcy court would not be relitigating Byrd's liability in violation of settled rules of *res judicata* because it was not actually resolving any disputed questions of law or fact. However, while the circuit court found no bona fide dispute, its reasoning differed from that of the bankruptcy court. It stated:

> The Bankruptcy Code does not require that a debtor's assets be dissipated while frivolous or hopeless appeals wend their way through the courts, but neither does it permit debt collection by every creditor that has reduced its claims to judgment. Platinum was eligible to file an involuntary petition against Byrd not simply because Platinum had reduced its claims to judgment, but because Byrd failed to raise any substantial factual or

legal questions about the continued viability of those judgments.

*Id.* at 440. The court found no "hard and fast" rule embodied in the text of the Bankruptcy Code which dictates that an unstayed judgment on appeal can never be the subject of a bona fide dispute. Indeed it viewed the definition of "claim" set forth in 11 U.S.C. § 101(5)(A)[10] to expressly refute the notion that the existence of a bona fide dispute depends on whether a claim has been reduced to judgment, and looked to the purpose of the bona fide dispute provision, *i.e.,* to prevent creditors from using involuntary bankruptcy "to coerce a debtor to satisfy a judgment even when substantial questions may remain concerning the liability of the debtor." *Id.* at 438 (*quoting Prisuta,* 121 B.R. at 476). In finally concluding that there was no bona fide dispute, the court made clear that it was the failure of the debtor to raise any substantial factual or legal questions about the judgments not the application of the *Drexler* principle embraced by the bankruptcy court that compelled the outcome of the contested involuntary case.

I find the instant facts to present an easier case than *Byrd* since the default judgments at issue here are the subject of motions to open. Unlike *Byrd,* there never was a hearing on the merits. Unlike *Prisuta,* the debtor did not contractually agree to a judgment by confession. However, like the courts in both these cases, I find it inappropriate to apply the *Drexler* principle but for the additional reason that the Debtor's contentions about her liability to Williams and Keller raise substantial factual and legal questions which have never been tested. Rather than allow the state court to address the pending motion to open and determine the continued via-

---

9. Notably the judgments in this case were entered after hearings were conducted.

10. That section provides, in pertinent part, that a "claim" is a right to payment, "whether or not reduced to judgment." *Id.*

bility of the judgment, Petitioners commenced these proceedings. I thus need to examine whether under applicable state law, there is a substantial likelihood of the default judgments being opened.

■ It is well settled that before a court can exercise its discretion to open a default judgment, the party seeking to do so must meet a three prong test: (1) a petition to open must be promptly filed; (2) the petitioner must state an adequate excuse why a timely answer was not filed; and (3) a meritorious defense must be demonstrated. *Schultz v. Erie Insurance Exchange*, 505 Pa. 90, 477 A.2d 471. 505 Pa. 90, 477 A.2d 471 (1984); *Stoltz v. Datascope Corp.*, 400 Pa.Super. 473, 479, 583 A.2d 1213, 1215 (1990). Rule 237.3 of the Pennsylvania Rules of Civil Procedure supplies two of the three prerequisites for opening such judgments by presupposing that a petition filed within ten (10) days after the entry of the judgment and on the docket and stating a meritorious defense is " both timely and with reasonable explanation or legitimate excuse for the inactivity or delay" resulting in the entry of the judgment." Explanatory Comment–1994, Pa.R.Civ.P. 237.3.

■ A review of the docket in the Keller and Williams litigation indicates that the presumption of Rule 237.3 applies to the Keller judgment which was entered on May 13, 2004 with the petition to open being filed on May 21, 2004 and therefore within the ten day period. On the other hand, a review of the docket in the Williams litigation indicates that the petition to open the judgment was *not* timely filed under the foregoing Rule. It was entered on March 8, 2004 and the petition to open did not follow until April 8, 2004. That petition would therefore be subject to

the requirements of *Schultz v. Erie Exchange, supra* requiring a reasonable explanation for the delay in answering the complaint in addition to a meritorious defense. 505 Pa. at 94, 477 A.2d at 473 (not an abuse of discretion to refuse to open default judgment where failure to plead an adequate explanation of the cause in answering the complaint). *Accord Continental Bank v. Rapp*, 336 Pa.Super. 160, 170, 485 A.2d 480, 485 (1984). With respect to the third prerequisite, the meritorious defense must appear on the face of the petition to open the judgment. *E.g., Wolfskill v. Egan*, 350 Pa.Super. 223, 227, 504 A.2d 326, 328 (Pa.Super.1986). While there appears to be a genuine issue under state law as to whether Mrs. Graber may be liable for the consumer claims arising from the work of K & G, I cannot ascertain from the state court docket alone whether this or any other defense was presented in the petition to reopen the Keller and Williams judgments. However, as this Court may take judicial notice of court pleadings under Fed.R.Evid. 201, I will allow the record to be supplemented for the submission of the pleadings relating to the petition to open in the Keller and Williams litigation.[11]

With the benefit of these documents, I will be in a position to determine whether it is likely that the state court would open these judgments and therefore whether either claim is in bona fide dispute. Until such time as I conclude that there is a single creditor holding a claim not subject to bona fide dispute so as to establish standing for the commencement of the involuntary case, I will defer discussion of the second issue in contention, *i.e.*, whether the putative debtor is paying her bills as they become due. An Order consistent

11. Debtor shall file a certified copy of the petition to open and Keller and Williams shall file a certified copy of the answer and memo-randum in support thereof. These are the documents that would have been considered by the state court in adjudicating the petition.

with the foregoing Memorandum Opinion shall be entered.

### ORDER

**AND NOW**, this 3rd day of December 2004, upon consideration of the contested Chapter 7 involuntary petition filed against Jennifer Graber (the "Debtor") by petitioning creditors Morgan Williams ("Williams"), Kimberly Weber ("Weber") and Rhonda Keller ("Keller") and together the ("Petitioners"), after notice and evidentiary hearing;

**And** for the reasons stated in the foregoing Memorandum Opinion, the Court requiring the record to be supplemented in order to determine whether an order for relief should be entered;

It is hereby **ORDERED** that Debtor and Petitioner Williams shall file certified copies of the pleadings that relate to the petitions to open judgment in *Williams v. Graber*, Docket # 2003 08172 and *Keller v. Graber*, Docket # 2004 01840 on or before **December 17, 2004.**