OPINION
HURWITZ, Circuit Judge:
This case presents a question of first impression in this court: Under § 303(b)(1) of the Bankruptcy Code, 11 U.S.C. § 303(b)(1), is an unstayed state judgment on appeal per se a “claim against [the debtor] that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount?” Our answer to that question is “yes.”
I.
In 2007, Georges Marciano sued five of his former employees in California Superi- or Court, alleging theft. Three employees — Joseph Fahs, Steven Chapnick, and Elizabeth Tagle (the “Petitioning Creditors”)^ — cross-complained, alleging defamation and intentional infliction of emotional distress. As a sanction for a pattern of discovery abuses, the state trial court struck Marciano’s answers to the cross-claims. After a jury trial on damages, the trial court entered judgments in favor of Fahs, Chapnick, and Tagle for $55 million, $35 million, and $15.3 million, respectively.[1]
Marciano appealed the three judgments to the California Court of Appeal but did not post a bond to stay them during appeal. See Cal.Civ.Proc.Code § 917.1(1) (“Unless an undertaking is given, the perfecting of an appeal shall not stay enforcement of the judgment or order in the trial court if the judgment or order is for ... *1125 [m]oney or the payment of money ... ”). The Superior Court and Court of Appeal denied Marciano’s stay requests, and the California Supreme Court denied his petition for review.
In addition to the Petitioning Creditors, five others had obtained judgments against Marciano totaling approximately $190 million. While the appeals of the Petitioning Creditors’ judgments were pending, various judgment creditors began collection efforts. The Petitioning Creditors then filed an involuntary petition, pursuant to § 303(b)(1) of the Bankruptcy Code, against Marciano in the United States Bankruptcy Court for the Central District of California.
Marciano moved to dismiss the petition for defective service of process. The bankruptcy court denied the motion. The bankruptcy court subsequently rejected Marciano’s efforts to conduct discovery as to whether the involuntary petition had been filed in bad faith and granted the Petitioning Creditors’ motion for summary judgment. In re Marciano, 446 B.R. 407 (Bankr.C.D.Cal.2010). The United States Bankruptcy Appellate Panel for the Ninth Circuit (“BAP”) affirmed. Marciano v. Fahs (In re Marciano), 459 B.R. 27 (9th Cir. BAP 2011).
This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 28 U.S.C. § 158.[2]
II.
Marciano’s first argument on appeal&emdash;that the bankruptcy court erred in denying his motion to dismiss for defective service of process-need not detain us long. Bankruptcy Rule 7004(b) permits serviee of the summons and complaint by first class mail “to the individual’s dwelling house or usual place of abode or to the place where the individual regularly conducts a business or profession.” Fed. R. Bankr.P. 7004(b)(1). The petition and summons here were served at a Beverly Hills address. At the time of service, Marciano had listed that address with the California Secretary of State as the place where he could be served with process as the agent for four of his businesses. Marciano’s designation of the Beverly Hills address for service of process was a certification that he either lived at or regularly conducted business there, see Cal. Corp. Code § 1502(b), and the bankruptcy court therefore did not err in denying the motion to dismiss.
III.
Marciano’s second argument, however, requires more extended discussion. He contends that, because the judgments obtained by the Petitioning Creditors were on appeal when the involuntary petition was filed, the bankruptcy court should have dismissed the petition as not meeting the requirements of § 303(b)(1) of the Bankruptcy Code.
Under § 303(b)(1), an involuntary bankruptcy may be commenced against a debtor by the filing of a petition
by three or more entities, each of which is either a holder of a claim against such person that is not contingent as to liability or the subject of a bona fide dispute as to liability or amount, or an indenture trustee representing such a holder, if such noncontin- *1126 gent, undisputed claims aggregate at least $14,425 more than the value of any lien on property of the debtor securing such claims held by the holders of such claims[J
11 U.S.C. § 303(b)(1) (footnote omitted). The bankruptcy court and the BAP successively held that an unstayed non-default state judgment is a claim not in bona fide dispute as to liability or amount under § 303(b)(1). In re Marciano, 446 B.R. at 422; In re Marciano, 459 B.R. at 54-55. Because the issue turns on interpretation of the Bankruptcy Code, we review those holdings de novo. Temecula v. LPM Corp. (In re LPM Corp.), 300 F.3d 1134, 1136 (9th Cir.2002).
Perhaps because the Bankruptcy Code does not define “bona fide dispute,” interpretation of § 303(b)(1) has divided courts. The majority view — the “Drexler ” rule — is that unstayed non-default state judgments on appeal are not subject to bona fide dispute for purposes of § 303(b)(1).[3] In re Drexler, 56 B.R. 960, 967 (Bankr.S.D.N.Y.1986); accord In re AMC Investors, LLC, 406 B.R. 478, 487 (Bankr.D.Del.2009); Norris v. Johnson (In re Norris), 1997 WL 256808, at *5, 114 F.3d 1182 (5th Cir.1997); In re Euro-Am. Lodging Corp., 357 B.R. 700, 712 (Bankr. S.D.N.Y.2007) (per curiam) (unpublished); In re Amanat, 321 B.R. 30, 37 (Bankr. S.D.N.Y.2005); In re Raymark Indus., Inc., 99 B.R. 298, 300 (Bankr.E.D.Pa.1989); In re Caucus Distribs., Inc., 83 B.R. 921, 929 (Bankr.E.D.Va.1988). Cases following this approach reason that it would be “contrary to the basic principles respecting, and would effect a radical alteration of, the long-standing enforceability of unstayed final judgments to hold that the pendency of the debtor’s appeal created a ‘bona fide dispute.’ ” In re AMC Investors, 406 B.R. at 484 (quoting In re Drexler, 56 B.R. at 967).
The minority approach — the “Byrd ” rule — holds that, although “it will be the unusual case in which a bona fide dispute exists in the face of claims reduced to state court judgments!,] [s]uch judgments do not guarantee the lack of a bona fide dispute.” Platinum Fin. Servs. Corp. v. Byrd (In re Byrd), 357 F.3d 433, 438 (4th Cir.2004). Under the Byrd rule, the petitioning creditor makes a “prima facie” case of compliance with § 303(b)(1) by presenting an unstayed state judgment, but the debtor is given the opportunity nonetheless to demonstrate the existence of a bona fide dispute as to liability or the amount of the debt. Id. at 439; accord In re Henry S. Miller Commercial, LLC, 418 B.R. 912, 920-21 (Bankr.N.D.Tex.2009); In re Graber, 319 B.R. 374, 377-78 (Bankr.E.D.Pa. 2004); In re Prisuta, 121 B.R. 474, 476 (Bankr.W.D.Pa.1990); In re Tucker, No. 5:09-bk-914, 2010 WL 4823917, at *3 (Bankr.N.D.W.Va. Nov. 22, 2010); In re Briggs, Nos. 07-34534, 07-34533, 2008 WL 190463, at *2 (Bankr.N.D.Tex. Jan. 18, 2008).
With appropriate deference to our sister circuit, we conclude that the Drexler rule is correct as a matter of both statutory interpretation and federalism.
Section 303(b)(1) requires that a petitioning creditor hold a “claim” against the debtor. Under § 101(5)(A) of the Bank *1127 ruptcy Code, a “claim” is a “right to payment, whether or not such right is reduced to judgment.” 11 U.S.C. § 101(5)(A). Thus, a right to payment includes a “judgment.” Accordingly, the “claims” of the three Petitioning Creditors to which the “not in bona fide dispute” screen of § 303(b)(1) applies are the three unstayed California judgments, not the underlying tort claims of defamation or slander. Under California law, these judgments, in the absence of a stay pending appeal, were plainly not contingent as to liability or amount. Rather, the Petitioning Creditors were entitled to immediate payment of those claims in the amounts set by the superior court judgments. See Cal.Civ. Proc.Code § 917.1(a)(1). The Petitioning Creditors thus had fully vested property interests in these claims under California law. See Butner v. United States, 440 U.S. 48, 55, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979) (noting that property interests in bankruptcy proceedings are typically defined by state law).
Although conceding that the Petitioning Creditors were free under California law to collect the amounts owed under the judgments at the time the involuntary petition was filed, Marciano nonetheless claims that the bankruptcy court should have evaluated the merits of the pending appeals before determining that the claims were not in bona fide dispute. His argument relies heavily on Liberty Tool & Manufacturing v. Vortex Fishing Systems, Inc. (In re Vortex Fishing Systems, Inc.), which posed the relevant inquiry under § 303(b)(1) as “whether there is an objective basis for either a factual or legal dispute as to the validity of the debt.” 277 F.3d 1057, 1064 (9th Cir.2001) (internal quotation marks omitted).
The argument is not persuasive. Vortex dealt with contract claims not yet reduced to judgment. Id. at 1062-63. Under those circumstances, § 303(b)(1) compelled an inquiry by the bankruptcy court as to the validity of the alleged debt in order to prevent the debtor from being forced into involuntary bankruptcy on the basis of a naked allegation of debt by a Petitioning Creditor. Id.; see also In re Byrd, 357 F.3d at 438 (noting that a central purpose of § 303(b)(1) is “to prevent creditors from using involuntary bankruptcy to coerce a debtor to satisfy a judgment even when substantial questions may remain concerning the liability of the debtor” (internal quotation marks omitted)). But where, as here, the amount and validity of the claims of the Petitioning Creditors have been established by non-default state judgments and the debtor’s immediate liability cannot be disputed under governing state law, there can be no such concerns. Indeed, it is difficult to imagine a more “objective” measure of the validity of a claim than an unstayed judgment entered by a court of competent jurisdiction.
In these circumstances, allowing the bankruptcy court to inquire further as to the validity of the Petitioning Creditor’s claims, rather than establishing an objective basis for evaluating § 303(b)(1) claims, instead “turns the court into an odds maker on appellate decision-making.” In re AMC Investors, 406 B.R. at 485. Such a process, which almost always will turn on a judgment by an Article I federal court as to whether a state trial court erred as a matter of state law in entering the judgment or whether a state court erred in denying a stay pending appeal, cannot be more “objective” than simply honoring the unstayed state judgment. If required to evaluate the merits of a debtor’s appeal at the time an involuntary petition is filed (often before appellate briefs are filed), reasonable jurists might well reach differing decisions. But there can be no dispute as to whether a state court judgment on appeal has been stayed.
*1128 Moreover, the Byrd approach runs counter to principles of federalism. Section 1738 of Title 28 of the United States Code requires a federal court to accord the judicial proceedings of a state court “the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State.” 28 U.S.C. § 1738. Such “full faith and credit” would be of little consequence if a federal court treated a non-default unstayed state judgment differently than it would be treated in its state of origin. If the creditor is entitled to have the judgment treated as valid in the state courts, we see no reason why a bankruptcy court should be allowed to question the judgment.
Congress could, of course, have modified the historic recognition of state sovereignty in § 1738 (which has its roots in the First Congress, see 1 Stat. 122 (May 26, 1790)), in adopting the Bankruptcy Code, but we discern no such intent in the current statute or its history. Section 63a of the Bankruptcy Act of 1898, the predecessor to § 303(b), required that a creditor filing an involuntary bankruptcy petition have a claim based upon a “fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition against [the debtor].” In interpreting § 63a, we held almost a century ago:
Where a judgment has not been paid, or has not been superseded on appeal by a bond ... surely the judgment debtor cannot avoid the effect of levy and execution. And here the effect of the appeal ... did not itself operate to stay execution or to stay proceedings or to make the judgment any the less an obligation absolutely owing by the bankrupt. ... If the debt was then a fixed liability in the form of a judgment the right to file the claim existed.
Moore v. Douglas (In re Berlin Dye Works & Laundry Co.), 230 F. 399, 402 (9th Cir.1916); see also Grafton v. Lloyd, 86 F.2d 205 (9th Cir.1936) (per curiam) (rejecting a debtor’s contention that un-stayed state judgments could not support an involuntary petition). Section 63a was replaced by § 303 in the Bankruptcy Reform Act of 1978, Pub.L. No. 95-598, 92 Stat. 2549. The Reform Act was designed to lighten the burden for creditors seeking to file an involuntary bankruptcy petition. Comm’n on the Bankruptcy Laws of the United States, Report of the Comm’n on the Bankruptcy Laws of the United States, H.R. Doc. No. 137, 93d Cong., 1st Sess. 1 (1973). Section 303(b) therefore should not be read as sub silentio lowering the status of unstayed state court judgments. See also Lawrence Ponoroff, Involuntary Bankruptcy and the Bona Fides of a Bona Fide Dispute, 65 Ind. L.J. 315, 322 (1990) (noting that the Reform Act “appreciably lightened the burden for creditors seeking to establish entitlement to involuntary relief’).
Moreover, the Drexler approach well serves a central purpose of the involuntary bankruptcy laws — to “protect the threatened depletion of assets or to prevent the unequal treatment of similarly situatfed] creditors.” In re Manhattan Indus., Inc., 224 B.R. 195, 200 (Bankr.M.D.Fla.1997). When a bankruptcy court prevents holders of unstayed state judgments from invoking involuntary bankruptcy, the ready alternative is precisely what the Code seeks to avoid — creditors “racing to the courthouse to dismember the debtor.” Danning v. Bozek (In re Bullion Reserve of N. Am.), 836 F.2d 1214, 1217 (9th Cir.1988).
We thus hold that an unstayed non-default state judgment is not subject to bona fide dispute for purposes of § 303(b)(1). The bankruptcy court did not err in finding that the Petitioning Credi *1129 tors held claims meeting the requirements of § 303(b)(1).[4]
IV.
Finally, Marciano contends that the bankruptcy court erred in entering an order precluding discovery as to the Petitioning Creditors’ alleged bad faith in filing the involuntary petition because (1) two Petitioning Creditors were the most aggressive of his creditors in their collection efforts, (2) the third Petitioning Creditor joined in the involuntary petition only after her settlement overtures were rebuffed, and (3) the Petitioning Creditors opposed Marciano’s various stay applications. We review the entry of a protective order for abuse of discretion. Foltz v. State Farm Mut. Auto. Ins. Co., 331 F.3d 1122, 1130 (9th Cir.2003).
The Bankruptcy Code does not expressly provide for dismissal of an otherwise proper involuntary petition because of the subjective “bad faith” of the filers. But even assuming the theoretical availability of such a defense, we cannot perceive the benefit of discovery on the issue here, where each of the Petitioning Creditors held a substantial judgment against Marciano. The bankruptcy court did not abuse its discretion in concluding that further discovery would have been unlikely to produce any evidence material to the pending summary judgment motions. See Fed. R.Civ.P. 26(b)(2)(C)(iii) (requiring a protective order if the “burden or expense of the proposed discovery outweighs its likely benefit”); Fed. R. Bankr.P. 7026 (providing that Fed.R.Civ.P. 26 applies in adversarial bankruptcy proceedings).
AFFIRMED.

. The jury originally returned verdicts in the amount of $74,044,000 in favor of each Petitioning Creditor. The trial court reduced the jury awards so that the damages did not exceed the amount demanded in each cross-complaint.

. Upon Marciano's motion, we granted a stay pending appeal, subject to appropriate conditions to be established by the BAP. The BAP then issued an order establishing such conditions and giving Marciano thirty days to satisfy them. Rather than comply, Marciano filed a motion to vacate or modify the conditions in this court. We denied that motion and dissolved the stay.

. When a claim, arises from a default judgment, the bankruptcy court may determine whether the court entering the judgment lacked personal jurisdiction. See In re AMC Investors, LLC, 406 B.R. 478, 487 (Bankr. D.Del.2009); see also Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 706, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982) ("A defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding.”).

. Shortly before oral argument, the California Court of Appeal affirmed the three judgments held by the Petitioning Creditors, but reduced each to $10 million. Gottlieb v. Fahs, No. B218087, 2012 WL 5310004, at *1 (Cal.Ct. App. Oct. 29, 2012) (unreported). No timely petition for review was filed, and the Court of Appeal's judgment is now final. Because the issue of whether the involuntary petition was appropriate is measured at the time of filing, In re Drexler, 56 B.R. at 968, this affirmance does not inform our analysis today.