﻿Citation Nr: AXXXXXXXX
Decision Date: 02/26/19 Archive Date: 02/26/19

DOCKET NO. 181024-605
DATE: February 26, 2019

ORDER

Service connection for L4-5 facet arthropathy, claimed as a lumbar strain and hereinafter referred to as a lumbar disability, is granted.

Service connection for sleep impairment, claimed as sleep apnea, is denied. 

Service connection for lumbar radiculitis to include nerve pain radiating down to the left lower extremity, claimed as sciatica in the left lower extremity, secondary to L4-5 facet arthropathy, is granted. 

Service connection for lumbar radiculitis to include nerve pain radiating down to the right lower extremity, claimed as sciatica in the right lower extremity, secondary to L4-5 facet arthropathy, is granted. 

FINDINGS OF FACT

1. The Veteran has a current disability of L4-5 facet arthropathy. 

2. Symptoms of L4-5 facet arthropathy were continuous since service. 

3. The Veteran does not have a diagnosis of sleep apnea. 

4. The Veteran is service connected for major depressive disorder, which compensates for chronic sleep impairment since service separation. 

5. The Veteran has a current disability of lumbar radiculitis with nerve pain radiating down to the left lower extremity. 

6. The currently diagnosed lumbar radiculitis with nerve pain radiating down to the left lower extremity was worsened in severity by the now service-connected L4-5 facet arthropathy.

7. The Veteran has a current disability of lumbar radiculitis with nerve pain radiating down to the right lower extremity. 

8. The currently diagnosed lumbar radiculitis with nerve pain radiating down to the right lower extremity was worsened in severity by the now service-connected L4-5 facet arthropathy.

CONCLUSIONS OF LAW

1. Resolving reasonable doubt in the Veteran’s favor, the criteria for service connection for the lumbar disability have been met. 38 U.S.C. §§ 1110, 1131, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309, 3.326.

2. The criteria for service connection for sleep impairment, claimed as sleep apnea, have not been met. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303.

3. Resolving reasonable doubt in the Veteran’s favor, the criteria for service connection for the lumbar radiculitis to include nerve pain radiating down to the left lower extremity have been met. 38 U.S.C. §§ 1110, 1131, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.310, 3.326.

4. Resolving reasonable doubt in the Veteran’s favor, the criteria for service connection for the lumbar radiculitis to include nerve pain radiating down to the right lower extremity have been met. 38 U.S.C. §§ 1110, 1131, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.310, 3.326.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (to be codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA). This law creates a new framework for Veterans to seek review. The Board is honoring the Veteran’s choice to participate in VA’s test program, RAMP, the Rapid Appeals Modernization Program.

The Veteran served on active duty from January 1985 to January 2005, including service in the Southwest Asia theater. The Veteran selected the Higher-Level Review lane when he submitted the RAMP election form. Accordingly, the July 2015 Legacy rating decision considered the evidence of record prior to the issuance of the RAMP election form. The Veteran timely appealed the Legacy rating decision to the Board and requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

The new and material evidence issues regarding the lumbar strain and sleep apnea has been recharacterized to reflect the new evidentiary standard under the AMA. Pub. L. No. 115-55, § 5108, 131 Stat. 1105, 1109.

Legal Authority for Service Connection

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated by active military, naval, or air service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d). As a general matter, service connection for a disability requires evidence of: (1) the existence of a current disability; (2) the existence of the disease or injury in service, and; (3) a relationship or nexus between the current disability and any injury or disease during service.

Service connection may be established on a presumptive basis for chronic diseases listed under 38 C.F.R. § 3.309(a) if chronic symptoms of the disease were shown in service; the disease was manifested to a compensable degree with a presumptive period, usually one year after service separation; or continuous symptoms of the disease were manifested since service. See 38 U.S.C. §§ 1112, 1113; 38 C.F.R. §§ 3.303(b), 3.307, 3.309(a); see also Walker v. Shinseki, 708 F. 3d 1131 (Fed. Cir. 2013). Arthritis is listed as a chronic disease under 38 C.F.R. § 3.303(b), and the presumptive service connection provisions are applicable to arthritis claims. 

Service connection may also be granted for a disability that is proximately due to or the result of a service-connected disability. See 38 C.F.R. § 3.310(a). When service connection is thus established for a secondary condition, the secondary condition shall be considered a part of the original condition. See id.; Harder v. Brown, 5 Vet. App. 183, 187 (1993). The controlling regulation has been interpreted to permit a grant of service connection not only for disability caused by a service-connected disability, but for the degree of disability resulting from aggravation of a non-service-connected disability by a service-connected disability. See Allen v. Brown, 7 Vet. App. 439, 448 (1995). In other words, service connection may be granted for a disability found to be proximately due to, or the result of, a service-connected disease or injury. To prevail on the issue of secondary service causation, the record must show (1) evidence of a current disability, (2) evidence of a service-connected disability, and (3) medical nexus evidence establishing a connection between the current disability and the service-connected disability. Wallin v. West, 11 Vet. App. 509, 512 (1998); Reiber v. Brown, 7 Vet. App. 513, 516-17 (1995).

1. Service Connection for the Lumbar Disorder

The Veteran contends that he injured the back in service while carrying heavy objects, such as ammunition, as part of duties associated with the military occupational specialty. The Veteran also contends that the injury is etiologically related to the claimed lumbar disorder.

The AOJ found that new and relevant evidence has been received in regard to the lumbar disorder claim. 

The questions in this case are: (1) whether the Veteran has a current disability; and, (2) if the disability is a chronic disability under 38 C.F.R. § 3.309, whether (2a) the Veteran experienced chronic symptoms of the disease were shown in service; (2b) the disease was manifested to a compensable (10 percent) degree with a presumptive period, usually one year after service separation; or (2c) continuous symptoms of the disease were manifested since service.

The evidence shows that the Veteran has a current disability of L4-5 facet arthropathy. See June 2014 Private Treatment Records. Facet arthropathy is a form of arthritis, which is a chronic disease under 38 C.F.R. § 3.309. See Godfrey v. Brown, 7 Vet. App. 398, 403 (1995). Thus, the provisions of the chronicity presumption are applicable to the lumbar disorder claim. The Board also finds that the Veteran experienced continuous symptoms of the L4-5 facet arthropathy since service as evidence by medical evidence and credible lay statements provided by the Veteran. 

According to service records, the Veteran served on active duty for 20 years and over those 20 year he was assigned multiple military occupational specialties. According to the DD Form 214, the Veteran was a network systems administration air traffic control craftsman, munitions systems journeyman, and automated systems programming craftsman air traffic control. As part of these specialties, the Veteran worked with ammunitions. See February 2018 Photographs. In February 1995, during service, the Veteran reported back pain radiating down from his spine into the right thigh. See February 1995 Service Treatment Record. In addition, the Veteran filed for service connection for a back disorder, claimed as a lumbar strain, while on active duty service. See June 2004 Report of Medical Assessment. In June 2004, during service, the Veteran reported that he had trouble sitting for long periods of time due to lower back pain. Moreover, the Veteran claimed that he experienced lower back pain in service for which he did not seek medical attention. See June 2004 Service Treatment Record. 

The evidence demonstrates continuous symptoms of back pain since service separation. Since service separation, the Veteran has sought treatment for back pain on multiple occasions. See generally March 2006 Private Treatment Record; October 2013 VA Treatment Records; December 2013 VA Treatment Records; April 2014 Private Treatment Record; June 2014 Private Treatment Records; July 2014 Private Treatment Records; September 2014 Private Treatment Records; July 2015 VA Treatment Record; April 2016 VA Treatment Records; February 2017 VA Treatment Records. In addition, a private doctor proffers that, during the course of the Veteran’s military career, “he had frequent lifting duties of manual labor that aggravated his neck, thoracic and low back.” June 2014 Private Treatment Records.

The Veteran explained that when he was on active duty he had to lift heavy objects on a daily basis as part of the duties associated with the military occupational specialty. See February 2018 Correspondence; February 2018 Photographs. The Veteran claimed that he did not seek medical treatment for the back injuries in service because the military medical provider “would just give [him] Motrin and send [him] back to work.” The Veteran also claimed that doctors told him that the service-connected hip disabilities contributed to the back pain. From 2005 to 2008, the Veteran experienced lower back pain daily and doctors recommended taking Motrin to treat the pain. In December 2009, the Veteran received hip surgery, which alleviated some of the back pain, but he still experiences pain radiating from the lower back to the legs.

The Board finds the Veteran competent and credible to report in-service and post-service symptomatology. The Veteran is also competent to report pain and in-service injuries. The Veteran has provided contemporaneous lay statements made for the purpose of treatment and thorough explanations of the symptomatology.

Resolving all reasonable doubt in the Veteran’s favor, the Board finds that the criteria for service connection for L4-5 facet arthropathy have been met. As service connection is being granted on a presumptive basis based on continuous post-service symptoms under 38 C.F.R. § 3.303(b), there is no need to discuss entitlement to service connection on a direct or any other basis as other theories of service connection have been rendered moot, leaving no question of law or fact to decide. See 38 U.S.C. § 7104.

2. Service Connection for Sleep Impairment

The Veteran contends that he experienced symptoms of sleep apnea in service, and that he has continued to experience those symptoms after service separation. Based on these assertions, the AOJ found that new and relevant evidence has been received in regard to the sleep impairment claim. 

The questions in this case are whether the Veteran has a current disability, and whether an injury, disease, or event occurred in service. As the facts found regarding these questions, and their legal implications, are dispositive of the case, the Board does not reach the question of whether a causal relationship or nexus exists between any current disability and active duty service. 

The Board finds that the Veteran does not have a diagnosis of sleep apnea. The Board also finds that, while the Veteran experienced sleep impairment in service, the claimed sleep impairment is fully compensated as a symptom of “chronic sleep impairment” rated as part of the service-connected major depressive disorder. 

The compensation the Veteran receives for the service-connected major depressive disorder accounts for chronic sleep impairment as a symptom of the major depressive disorder. The RO granted service connection for the major depressive disorder in August 2011 and assigned a 30 percent rating effective February 1, 2005 (the day after service discharge), based on symptoms of depressed mood, anxiety, and mild memory loss. In the March 2016 rating decision, the RO granted an increased rating for the major depressive disorder at 50 percent, effective January 15, 2016, based on symptoms of depressed mood, disturbances of motivation and mood, anxiety, difficulty in establishing and maintaining effective work and social relationships, and chronic sleep impairment. Chronic sleep impairment is a symptom or measure fully contemplated even under the 30 percent rating criteria for the major depressive disorder. As the Veteran is being compensated for chronic sleep impairment as part of the service-connected major depressive disorder, he cannot be compensated for chronic sleep impairment in the instant claim for service connection for sleep apnea. Pyramiding, the rating of the same disability, or the same manifestation of a disability, under different diagnostic codes, is to be avoided when rating a veteran's service-connected disabilities. 38 C.F.R. § 4.14. See Esteban v. Brown, 6 Vet. App. 259, 261-62 (1994) (stating that the critical element in permitting the assignment of several ratings under various diagnostic codes is that none of the symptomatology for any one of the conditions is duplicative or overlapping with the symptomatology of the other condition); Lyles v. Shulkin, 29 Vet. App. 107 (2017) (holding that 38 C.F.R. § 4.14 prohibits compensating a veteran twice for the same symptoms or functional impairment).

In consideration of the foregoing, the Board finds that a preponderance of the lay and medical evidence that is of record weighs against the appeal of service connection for sleep impairment, claimed as sleep apnea. See 38 U.S.C. § 5107; 38 C.F.R. § 3.102.

3. Service Connection for Lumbar Radiculitis, to Include Nerve Pain Radiating Down to the Left Lower Extremity, Secondary to the Now Service-Connected L4-5 Facet Arthropathy, Claimed as Sciatica in the Left Lower Extremity Secondary to the Claimed Lumbar Strain

4. Service Connection for Lumbar Radiculitis, to Include Nerve Pain Radiating Down to the Right Lower Extremity, Secondary to the Now Service-Connected L4-5 Facet Arthropathy, Claimed as Sciatica in the Right Lower Extremity Secondary to the Claimed Lumbar Strain

The labeling of these two issues has had a confusing procedural history. In the January 2014 fully developed claim, the Veteran requested service connection for sciatica secondary to a lumbar strain, a back condition secondary to a lumbar strain, and back pain secondary to a lumbar strain. In the July 2015 rating decision, the RO denied service connection for a “back condition with sciatica (to include back pain).” In the July 2015 Notice of Disagreement, the Veteran appealed the issues of service connection for “lower back and sciatica secondary to the back.” The Veteran elected into RAMP in February 2018, requesting higher level review. In response, the RO issued a July 2018 rating decision, denying service connection for “sciatica, left lower extremity as secondary to lumbar strain” and “sciatica, right lower extremity as secondary to lumbar strain.” 

The Board has recharacterized these issues in the current appeal stream as service connection for lumbar radiculitis (the diagnosed disability) to include nerve pain radiating down to the left and right lower extremities as secondary to L4-5 facet arthropathy, which was claimed as sciatica in the left and right lower extremities.

The AOJ did not make any favorable findings to advance the Veteran’s claims.

The question in this case is whether the Veteran has a current disability of the lower extremities and, if so, whether the current disability was caused or worsened in severity by a service-connected low back disability.

The Board finds that the Veteran has a current disability of lumbar radiculitis, according to June 2014 private treatment records. While there is no diagnosis of a nerve problem related to either lower extremity, the Board recognizes that the Veteran credibly claims that the nerve pain in the back radiates down to both lower extremities. The Board finds that the Veteran is entitled to separate ratings for lumbar radiculitis affecting both right and left lower extremities. The Veteran is competent to report symptoms of pain, including where the pain originates and where the pain radiates towards. 

(Continued on the next page)

 

Resolving all reasonable doubt in the Veteran’s favor, the Board finds that the criteria for service connection have been met for lumbar radiculitis to include nerve pain radiating down to the left and right lower extremities secondary to L4-5 facet arthropathy, claimed as sciatica in the left and right lower extremities. As service connection is being granted on a secondary basis for both issues 38 C.F.R. § 3.310, there is no need to discuss entitlement to service connection on any other basis as other theories of service connection have been rendered moot, leaving no question of law or fact to decide. See 38 U.S.C. § 7104.

 

J. PARKER

Veterans Law Judge

Board of Veterans’ Appeals

ATTORNEY FOR THE BOARD Danielle Costantino, Associate Counsel